**Ola Mae VANN et al., Petitioners-Appellants,**

v.

**William J. SCOTT, Attorney General of the State of Illinois, and Edward V. Hanrahan, State's Attorney of Cook County, Illinois, Respondents-Appellees.**

No. 71–1387.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1972.

Decided Sept. 13, 1972.

Lewis A. Wenzell, Patrick T. Murphy, Chicago, Ill., for petitioners-appellants.

Edward V. Hanrahan, State's Atty., James A. Rooney, Asst. State's Atty., William J. Scott, Atty. Gen., Morton E. Friedman, Asst. Atty. Gen., Chicago, Ill., James B. Zagel, Robert E. Davison, Asst. Attys. Gen., Crim. Justice Div., Chicago, Ill., for respondents-appellees.

Before SWYGERT, Chief Judge, KILEY and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Plaintiffs contend that § 2–2(b) of the Illinois Juvenile Court Act[1] is unconstitutional because it allows the State to stigmatize and to punish runaway children in the same way as young persons guilty of aggravated felonies. They contend that the classification of runaways as delinquents offends the Equal Protection Clause of the Fourteenth Amendment and that the potential punishment is cruel and unusual within the Eighth Amendment. These contentions have been rejected by the Illinois Supreme Court[2] and by the court below.

As originally filed, the complaint requested a three-judge court, a declaration that § 2–2(b) is unconstitutional, and an injunction against its enforcement. The prayer for injunctive relief was thereafter abandoned, the district court denied the request to convene a three-judge court and dismissed the complaint. This appeal followed.[3]

1. Ill.Rev.Stat. Ch. 37, § 702–2(b).

2. In re Presley, 47 Ill.2d 50, 264 N.E.2d 177 (1970).

3. The abandonment of the request for injunctive relief eliminated the need for a three-judge court. See 28 U.S.C. § 2281. Although the district court's memoran-

■ Plaintiffs are juveniles who, because they have run away on more than one occasion either from family situations which they found intolerable or from foster homes to which they were unable to adjust, have been found to be minors in need of supervision pursuant to § 2–3 of the Illinois statute.[4] Each had violated a court order by again running away from home without consent. Delinquency petitions had been filed against them pursuant to § 2–2(b). That section now provides:[5]

> "Those who are delinquent include . . . (b) any minor who has violated a lawful court order made under this Act."

At the time the complaint was filed, petitions to declare the plaintiffs delinquent were pending in the Juvenile Court of Cook County. This action was originally filed on behalf of all boys under 17 years of age and girls under 18 years of age against whom similar delinquency petitions had been filed alleging the violation of a court order by running away without consent. Although the delinquency petitions against the named plaintiffs were dismissed voluntarily by the State prior to the decision of the court below,[6] the detailed allegations in the complaint indicate a likelihood that one or more such petitions might again be filed. Treating the question of standing on the basis of the facts as alleged at the time federal jurisdiction was invoked, we think plaintiffs had standing to raise the questions they have argued here.[7]

Plaintiffs argue that the statute is unconstitutional "as applied to their conduct."[8] A brief description of the statutory scheme will demonstrate that § 2–2(b) is not invalid on its face and will, we believe, make it plain why we are persuaded that no unconstitutional application to the plaintiffs is disclosed by the record.

### I.

A determination that a child is delinquent within the meaning of § 2–2(b) may be made only in an adjudicatory hearing. No challenge is made to the adequacy of the procedural safeguards which are set forth in the statute for such a hearing. A finding of delinquency may result in a variety of dispositional orders. One of the alternatives available is that such a minor may be committed to the Department of Corrections

---

dum opinion concluded that the federal claims were "insubstantial" and that a three-judge court was therefore not required, the court clearly indicated that it agreed with the Illinois Supreme Court that the challenged statute was constitutional. Thus, in the interests of justice, we construe the court's dismissal as a decision on the merits on the declaratory judgment question.

4. That section provides:
   "Those otherwise in need of supervision include (a) any minor under 18 years of age who is beyond the control of his parents, guardian or other custodian; (b) any minor subject to compulsory school attendance who is habitually truant from school; and (c) any minor who is an addict, as defined in the 'Drug Addiction Act'." Ill.Rev. Stat. Ch. 37, § 702–3.

5. After January 1, 1974, minors who violate court orders may be adjudicated minors in need of supervision but not delinquents. See the amendments to §§ 702–2 and 702–3 enacted by the General Assembly in 1972.

6. The dismissals were "without prejudice to their refiling." Brief for respondents-appellees, p. 3.

7. Plaintiffs clearly had standing at the time the complaint was filed. Actually, the issue is not strictly one of standing. The real contentions are that the action was initially precluded by 28 U.S.C. § 2283 and that it is now moot because the state proceedings have been dismissed. Because of the dismissals and since an injunction is no longer sought, 28 U.S.C. § 2283 plainly does not bar the action. Since we have concluded that the allegations establish a sufficient likelihood that one or more delinquency petitions might again be filed in the state courts, we believe there is an "actual" controversy within the terms of the federal declaratory judgment statute, 28 U.S.C. § 2201.

8. Brief for petitioners-appellants, p. 13.

under § 5–10 of the Act.[9] That section requires the court to make specific findings to support such a commitment, including a finding that the best interests of the minor and the public will not be served by an alternative disposition.[10]

■ On their face, we believe the statutory provisions relating to the possible commitment of a juvenile to the custody of the Department of Corrections following an adjudication of delinquency reveal no apparent defect. Plaintiffs contend, however, that in fact a substantial number of runaways are treated as though they are guilty of serious crimes and that such treatment violates their constitutional rights.

■ The short answer to plaintiffs' contention is that there is no certainty that they, or that any other identifiable members of the class they represent, will in fact receive the treatment of which they complain. It therefore cannot be said that the statute "as applied" to plaintiffs manifests any constitutional defect. We believe, however, that an ad-

ditional response should be made to each of plaintiffs' contentions.

## II.

Plaintiffs correctly argue that, apart from the matter of punishment, a finding of delinquency may have an adverse effect on their reputation and future. This impact is aggravated by the fact that nothing more serious than running away from surroundings which may be justifiably regarded as undesirable, or even intolerable, may lead to the same stigma as participation in a serious crime, such as rape or murder. We recognize the force to plaintiffs' objection, but do not believe the delinquency classification is constitutionally infirm.

Plaintiffs' objection could be met either by placing a more reprehensible label on those guilty of more serious conduct or by establishing a subcategory of "less blameworthy delinquents" for runaways only, or perhaps those guilty of only minor misconduct. As a matter of policy, perhaps such subclassification would be appropriate. On the other

---

**9.** Section 5–2 describing kinds of dispositional orders reads, in part:

"(1) The following kinds of orders of disposition may be made in respect of wards of the court:

"(a) A minor found to be a delinquent under Section 2–2 may be (1) put on probation and released to his parents, guardian or legal custodian, (2) placed in accordance with Section 5–7, with or without also being put on probation, or (3) committed to the Department of Corrections under Section 5–10." Ill.Rev. Stat. Ch. 37, § 705–2.

As amended effective January 1, 1973, § 705–2 provides, in part:

"Commitment to the Department of Corrections, Juvenile Division, shall be made only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor is adjudicated delinquent."

**10.** Section 5–10 reads as follows:

"(1) When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections if it finds that (a) his parents, guardian or legal

custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and (b) the best interests of the minor and the public will not be served by placement under Section 5–7.

"(2) When the court commits a minor to the Department of Corrections, it may order him conveyed forthwith to the appropriate reception depot or other place designated by the Department of Corrections, and shall appoint the Assistant Director of Corrections, Juvenile Division, legal custodian of the minor. The clerk of the court shall issue to the Assistant Director of Corrections, Juvenile Division, a certified copy of the order, which constitutes proof of his authority. No other process need issue to warrant the keeping of the minor.

"(3) Whenever the Department of Corrections lawfully discharges from its custody and control a minor committed to it, the Assistant Director of Corrections, Juvenile Division, shall petition the court for an order terminating his custodianship." Ill.Rev.Stat. Ch. 37, § 705–10.

hand, we cannot say that there is no rational basis for the General Assembly's definition of delinquency. The broad classification serves the legislative purpose of lessening the stigma that attaches to the youth who has committed a serious offense but is nevertheless an eligible candidate for complete rehabilitation. If the classification were to be narrowed, the stigma associated with the finding would increase.

■ The purpose of the classification is not primarily to label or to conceal the character of a child's misconduct. It is to afford the State an adequate opportunity to rehabilitate and safeguard delinquent minors rather than to punish them. Tragic though the plight of the chronic runaway may be, we cannot say that it is irrational to conclude that the same kind of correctional treatment may be appropriate for him as for another youth who has already engaged in more serious antisocial conduct.

The Illinois statutory scheme allows for great flexibility and discretion on the part of the court, both in the determination of delinquency and in the ensuing dispositional proceedings. There is certainly a rational basis for a legislative judgment that such broad discretion is desirable. We do not believe the Equal Protection Clause is violated either by the failure to create subcategories within the delinquency classification or by including runaways within the category of youths whose best interests may be found to require commitment to the Department of Corrections.

### III.

Plaintiffs' more serious contention is predicated on the Eighth Amendment. They argue that the so-called "training schools" to which many delinquents are committed are, in fact, prisons in which they are subjected to indignities and inhumane treatment.[11] They argue that there is no justification for punishment, certainly not of such an aggravated character, for conduct which is not a crime. Thus, some consequences of a delinquency adjudication are cruel and unusual.

In argument before us [12], the Attorney General advanced two justifications which we categorically reject.

■■ First, he argued that a minor child, unlike an adult, has no right to liberty; the child has only a right to a responsible adult custodian, and the Superintendent of the Department of Corrections is such a custodian. For

11. "The plaintiffs alleged that incarceration in a training school is no different than incarceration in a jail. They stated that the training schools have guards, cells, walls around the institution, frequent homosexual attacks and extreme and degrading disciplinary measures. While at the so-called training schools, runaways are mixed in the company of youths who have committed serious crimes, such as attempted murder, armed robbery, aggravated battery, rape, prostitution and other similar offenses. Indeed, an affidavit of a young girl who, at the time was incarcerated at the Illinois State Training School for Girls at Geneva, Illinois (R. 52–55), states that the girl was placed in Geneva for running away from home and violating the probation placed upon her by later truanting from school. She stated that she was placed in the company of girls who committed acts such as attempted murder, armed robbery, aggravated battery and prostitution. She further stated that these girls spoke at length concerning their crimes and the facts surrounding them. The girl went on to talk about homosexual activity almost every evening in her unit. She spoke of homosexual attacks and of being locked in a 5 foot by 8 foot room. She described a riot in her unit as well as girls who had been incarcerated in solitary confinement for up to two weeks. She stated that she never spoke to a social worker, psychiatrist or psychologist about her problems with her mother and how she might overcome them. In her affidavit, she points out that she was paroled but, two weeks later, again ran away from the house of her mother and was sent back to Geneva as a parole violator." Appellants' Brief, pp. 27–28.

12. We refer to the oral argument since the State abandoned the only point urged in its written brief.

this argument the State relies on In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527. But the portion of that opinion on which the State relies [13] describes a conceptual approach which is repudiated by the Court's actual holding. Later in that opinion, the Court unambiguously concluded that a juvenile has a right to liberty which is safeguarded by the Constitution.[14] Although there is room for legitimate difference of opinion about the content of the term "liberty" as used in the Fourteenth Amendment, particularly as its meaning may vary between adults and juveniles, we have no doubt that the constitutional protection encompasses children. The status of legal custodian does not give the Superintendent of the Department of Corrections carte blanche to disregard a child's constitutional rights.[15]

The Attorney General's second response is that the Eighth Amendment is inapplicable because the Illinois statute does not authorize any punishment of juveniles whatsoever. Whatever the State does with the child is done in the name of rehabilitation. Since—the argument runs—by definition the treatment is not "punishment," it obviously cannot be "cruel and unusual punishment." But neither the label which a State places on its own conduct, nor even the legitimacy of its motivation, can avoid the applicability of the Federal Constitution. We have no doubt that well intentioned attempts to rehabilitate a child could, in extreme circumstances, constitute cruel and unusual punishment proscribed by the Eighth Amendment.

13. "These results were to be achieved, without coming to conceptual and constitutional grief, by insisting that the proceedings were not adversary, but that the state was proceeding as *parens patriae*. The Latin phrase proved to be a great help to those who sought to rationalize the exclusion of juveniles from the constitutional scheme; but its meaning is murky and its historic credentials are of dubious relevance.

\* \* \* \* \*

"The right of the state, as *parens patriae*, to deny to the child procedural rights available to his elders was elaborated by the assertion that a child, unlike an adult, has a right 'not to liberty but to custody.' He can be made to attorn to his parents, to go to school, etc. If his parents default in effectively performing their custodial functions—that is, if the child is 'delinquent'—the state may intervene. In doing so, it does not deprive the child of any rights, because he has none. It merely provides the 'custody' to which the child is entitled." 387 U.S. at 16–17, 87 S.Ct. at 1437.

14. "In those States juveniles may be placed in or transferred to adult penal institutions after having been found 'delinquent' by a juvenile court. For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' And our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his lib-

erty—a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom." 387 U.S. at 50, 87 S.Ct. at 1455.

15. See Arnold v. Carpenter, 459 F.2d 939 (7th Cir. 1972), and cases cited in footnote 5 therein for an indication of the difference of opinion on the question whether the right of a child to wear his hair at any length or in any desired manner is constitutionally protected. Whatever differences of opinion there might be in specific cases, we think the law is clear that a state may not act arbitrarily with children merely because they are children. And while a parent, as legal custodian of his child, may be able to restrict his child's liberty with impunity (subject, of course, to child abuse legislation), it does not follow that a state has the same unfettered rights as a parent merely because it becomes legal custodian of the child. The state, even when acting in a "private" capacity, is always subject to the limitations of the Fourteenth Amendment. For example, the Supreme Court has long held, most recently in Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that the state, as an employer, does not have the same unfettered right to discharge employees as does a private employer. The Constitution places limits on a state's conduct which it does not place on a private person's conduct in the same situation.

On the other hand, we cannot accept plaintiffs' converse but equally doctrinaire argument that any correctional treatment that may be appropriate as punishment for a criminal offense is necessarily cruel and inhumane if applied to a runaway who has committed no crime. As the Illinois Supreme Court has held, in some circumstances the State's interest in safeguarding the lives and welfare of minors, or possibly its interest in seeking to deter repetition of undesirable though not criminal conduct, may justify the temporary incarceration of a chronic runaway. In our view, neither the inapplicability nor the applicability of the Eighth Amendment is controlled by the label—whether "rehabilitation" or "punishment"—accorded to a child in the State's custody.

■ We therefore assume as plaintiffs argue, that some of the allegations in their complaint describe cruel and unusual punishment which may not be inflicted upon mere runaways without offending the Eighth Amendment. But the question still remains whether that possible consequence of a finding of delinquency renders § 2–2(b) of the Illinois Juvenile Court Act unconstitutional. We think not.

The constitutional violation which is alleged is not a defect in the statute; it is a potential defect in the State's performance of its custodial function following a dispositional order. It is possible that any person, whether an adult convicted of murder or rape, or a child adjudicated delinquent, may become the victim of inhumane treatment. The Constitution's proscription against such treatment does not invalidate the statutory provision which authorized the adjudication of guilt preceding the imposition of such punishment. *Cf.* Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).[16] Plaintiffs have not yet been adjudicated delinquents.

In its broad discretion under the Illinois statute, the Juvenile Court may or may not enter an order remanding plaintiffs to the custody of the Superintendent of the Department of Corrections. Even if placed in his custody, there is no certainty that the treatment they will receive will be so unrelated to their respective problems that it would offend the Federal Constitution. But even assuming the worst does come to pass, that consequence does not, in our opinion, invalidate the statutory provision which authorizes an adjudication of delinquency.

We affirm the district court's holding that § 2–2(b) as applied to these plaintiffs does not violate the United States Constitution.

SWYGERT, Chief Judge (concurring).

The case comes before this court on a review of the district court's dismissal of the plaintiffs' complaint. Though I recognize that the matter was treated by the district judge as if it were before the court on the merits, I believe that such treatment was not warranted given the preliminary nature of the proceedings and the minimal information before the court. Only two questions should be considered at this point—whether the case presents a "substantial federal question" (which of necessity requires some inquiry into the merits) and whether the plaintiffs have standing to raise the claim.

The plaintiffs make no claim that section 702–2 is unconstitutional on its face. Briefly, that section allows courts to characterize as "delinquent" not only minors who have violated federal or state laws or municipal ordinances, but also minors who have "violated a lawful court order made under this Act." Plaintiffs attack the latter provision,

---

16. In three separate appeals the Court held that the imposition and carrying out of the death penalty following convictions of murder or rape was prohibited by the Eighth and Fourteenth Amendments. However, the judgment in each case was reversed only "insofar as it leaves undisturbed the death sentence imposed." 408 U.S. 240, 92 S.Ct. at 2727.

section 702–2(b), insofar as it is applied to so-called "chronic" runaways who have previously been adjudicated "Minors in Need of Supervision" and who are then under court order not to repeat their offense. This application is claimed to be constitutionally deficient in two respects. It permits courts to label as "delinquent" behavior which is essentially non-criminal, and it allows for assignment of runaways to state "training schools," a punishment which is alleged to be far more severe than their offense warrants.

I agree with the majority that the application of the "delinquent" status to these minors presents no issues of constitutional magnitude. However, I do find substance to the plaintiffs' eighth amendment claims. Plaintiffs appear to be making two kinds of eighth amendment claims, one that relates to specific conditions within training schools that are objectively "inhumane" as imposed on any inmate, and one that focuses on those conditions which are "inhumane" only as imposed upon runaways. In the former category, the complaint charges:

. . . that these institutions have male and female guards, cell walls around the institution, frequent homosexual attacks, extreme and degrading disciplinary measures used by the administrators. . . .

Plaintiffs' standing to raise these claims is not diminished by the fact that they may rightfully be made by any inmate.

The second claim mirrors the argument made in Robinson v. California, 370 U.S. 660, 676, 82 S.Ct. 1417, 8 L. Ed.2d 758 (1971). It requires evaluating the conditions typically found in training schools and determining whether they are appropriate in their application to runaways. A variety of considerations enter into a judgment of "appropriateness" including a comparison with the treatment actually given other kinds of offenders. Plaintiffs' claim, however, is distinguishable from a per se position that finds a constitutional deficiency whenever treatment of runaways and other criminals is identical. As an eighth amendment challenge, it requires that courts analyze the kind of correctional treatment training school incarceration entails, compare the offense categories to which that treatment has been applied, and determine whether or not it is "appropriate" to the class before the court.

While the latter claim is only vaguely articulated, I do not find that this by itself warrants dismissal. Rather, I would base dismissal on the grounds of ripeness. Plaintiffs' claim that they are threatened with immediate delinquency proceedings is insufficient since a judgment of delinquency does not automatically require assignment to a training school. Section 705–2 provides at least two other remedial alternatives. I would find otherwise only if the plaintiffs claimed that all runaways who are held to be delinquents are sent to training schools. In that case, the threat of bringing delinquency petitions is tantamount to a threat of assigning minors to training schools.

Plaintiffs vaguely suggest that delinquency proceedings are instituted principally so that runaways may be sent to training schools. They allege that assignment to training schools is the "very probable outcome" of a delinquency petition. However, they make no specific allegations to buttress these claims.

Accordingly, I would dismiss the complaint without prejudice.