Gary KNECHT et al., Appellants,

v.

James N. GILLMAN et al.,
Appellees.

No. 73-1374.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1973.

Decided Dec. 5, 1973.

L. Vern Robinson, Hawkeye Legal Aid Society, Iowa City, Iowa, for appellants.

Thomas Hronek, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This is an action by Gary Knecht and Ronald Stevenson, both in the custody of the State of Iowa, against officials of that state, under 42 U.S.C. § 1983. Their complaint alleged that they had been subjected to injections of the drug apomorphine at the Iowa Security Medical Facility (ISMF) without their consent and that the use of said drug by the defendants constituted cruel and unusual punishment in violation of the eighth amendment. The trial court dismissed their complaint for injunctive relief. We reverse with directions to enjoin the defendants from further use of the drug except pursuant to specific guidelines hereinafter set forth.

After this case was filed in the district court, an order was entered assigning the case to the United States Magistrate for an evidentiary hearing pursuant to Rule 53 of the Federal Rules of Civil Procedure. This hearing was conducted by the magistrate who later filed his "Report and Recommendation" which included a summary of all of the evidence, findings and recommendations to the trial court. He recommended that the complaint be dismissed but that, if the drug was to be used in the future at ISMF, certain precautionary steps be taken in administering the drug and in employing the help of inmate aides.

The trial court then gave the parties ten days within which to file objections to the report and recommendations pursuant to Rule 53(e)(2) of Federal Rules of Civil Procedure. Knecht and Stevenson filed their objections seeking clarification of two factual findings of fact. They objected to the recommendations of the magistrate and again requested that the trial court enjoin the injections of apomorphine into nonconsenting inmates. They also requested that the court incorporate the magistrate's recommendation, regarding the future use of inmate aides, into the court's order. The trial court dismissed the complaint and did not adopt the recommendations of the magistrate concerning the administration of apomorphine in the future.

On this appeal neither party challenges the use of the magistrate as a master pursuant to Rule 53 of the Federal Rules of Civil Procedure, and neither party makes any serious challenge to the factual findings of the magistrate. There is no indication that the reference to the magistrate, as master, was done pursuant to local rule, and we assume it was done because of "some exceptional condition" pursuant to Rule 53(b) Federal Rules of Civil Procedure. Under these circumstances we do not reach the question nor express any opinion on the propriety of referring § 1983 cases to a magistrate pursuant to local rule.[1]

The summary of the evidence contained in the report of the magistrate showed that apomorphine had been administered at ISMF for some time prior to the hearing as "aversive stimuli" in the treatment of inmates with behavior problems. The drug was administered by intra-muscular injection by a nurse after an inmate had violated the behavior protocol established for him by the staff. Dr. Loeffelholz testified that the drug could be injected for such pieces of behavior as not getting up, for giving cigarettes against orders, for talking, for swearing, or for lying. Other inmates or members of the staff would report on these violations of the protocol and the injection would be given by the nurse without the nurse or any doctor having personally observed the violation and without specific authorization of the doctor.

When it was determined to administer the drug, the inmate was taken to a room near the nurses' station which contained only a water closet and there given the injection. He was then exercised and within about fifteen minutes he began vomiting. The vomiting lasted from fifteen minutes to an hour. There is also a temporary cardiovascular effect which involves some change in blood pressure and "in the heart." This aversion type "therapy" is based on "Pavlovian conditioning."[2]

---

1. Several courts, tacitly or expressly, condone reference of civil matters to magistrates. Dewrell v. Weinberger, 478 F.2d 699 (5th Cir. 1973) ; Remington Arms Co. v. United States, 461 F.2d 1268 (2d Cir. 1972) ; Givens v. W. T. Grant Co., 457 F.2d 612 (2d Cir. 1972). Other courts have seriously questioned or disapproved of the power of a court to refer matters to magistrates. Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972) ; TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972). A split of authority also exists on reference of habeas petitions to magistrates. Some courts approve of the procedure, United States ex rel. Gonzalez v. Zelker, 477 F.2d 797 (2d Cir. 1973) ; Johnson v. Wainwright, 456 F.2d 1200 (5th Cir. 1972) ; Parnell v. Wainwright, 464 F.2d 735 (5th Cir. 1972), while others have disap-proved of the practice, Wedding v. Wingo, 483 F.2d 1131 (6th Cir. 1973) ; Dye v. Cowan, 472 F.2d 1206 (6th Cir. 1972) ; Rainha v. Cassidy, 454 F.2d 207 (1st Cir. 1972).

2. Pavlovian conditioning is based on the theory that when environmental stimuli or the kinetic stimuli produced by the incipient movements of the punished act are made contiguous with punishment, they take on some of the aversive properties of the punishment itself. The next time the organism begins the act, particularly in the same environment, it produces stimuli which through classical conditioning have become aversive. It is these aversive stimuli which then prevent the act from occurring. Singer, Psychological Studies of Punishment, 58 Calif. L.Rev. 405, 423 (1970).

The record is not clear as to whether or not the drug was always used with the initial consent of the inmate. It has apparently been administered in a few instances in the past without obtaining written consent of the inmate and once the consent is given, withdrawal thereof was not permitted. Apparently, at the time of trial apomorphine was not being used unless the inmate signed an initial consent, but there is no indication that the authorities now permit an inmate to withdraw his consent once it is given. Neither is there any indication in the record that the procedure has been changed to require the prior approval of a physician each time the drug is administered. Likewise there is no indication that there has been any change in the procedure which permits the administration of the drug upon reports of fellow inmates despite a recommendation by the magistrate that this practice should be avoided.

The testimony relating to the medical acceptability of this treatment is not conclusive. Dr. Steven Fox of the University of Iowa testified that behavior modification by aversive stimuli is "highly questionable technique" and that only a 20% to 50% success is claimed. He stated that it is not being used elsewhere to his knowledge and that its use is really punishment worse than a controlled beating since the one administering the drug can't control it after it is administered.

On the other hand, Dr. Loeffelholz of the ISMF staff testified that there had been a 50% to 60% effect in modifying behavior by the use of apomorphine at ISMF. There is no evidence that the drug is used at any other inmate medical facility in any other state.

The Iowa Security Medical Facility is established by Section 223.1, Code of Iowa, 1973. It is an institution for persons displaying evidence of mental illness or psychological disorders and requiring diagnostic services and treatment in a security setting. The patients admitted to the facility may originate from the following sources:

1) residents of any institution under the jurisdiction of the department of social services;

2) commitments by the courts as mentally incompetent to stand trial under Chapter 783 of the Iowa Code;

3) referrals by the court for psychological diagnosis and recommendations as part of the pretrial or presentence procedure or determination of mental competency to stand trial;

4) mentally ill prisoners from county and city jails for diagnosis, evaluation, or treatment.

Section 223.4, Code of Iowa, 1973.

Those transferred from institutions where they were committed pursuant to civil statutes or those who were committed by order of the court prior to conviction, suffer a compromise of their procedural rights in the process of the transfer to ISMF. The constitutional justification of this compromise of procedure is that the purpose of commitment is treatment, not punishment. *Cf.* McKeiver v. Pennsylvania, 403 U.S. 528, 552, 91 S.Ct. 1976, 29 L.Ed.2d 647 (White, J., concurring) (1971); Sas v. Maryland, 334 F.2d 506, 509 (4th Cir. 1964). Beyond this justification for treatment is the clear command of the statutes that the purpose of confinement at ISMF is not penal in nature, but rather one of examination, diagnosis and treatment. Naturally, examination and diagnosis, by their very definition, do not encompass the administration of drugs. Thus, when that course of conduct is taken with respect to any particular patient, he is the recipient of treatment.

The use of apomorphine, then, can be justified, only if it can be said to be treatment. Based upon the testimony adduced at the hearing and the findings made by the magistrate and adopted by the trial court, it is not possible to say that the use of apomorphine is a recognized and acceptable medical practice in institutions such as ISMF. Neither can we say, however, that its use on inmates who knowingly and intelligently consent

to the treatment, should be prohibited on a medical or a legal basis. The authorities who testified at the evidentiary hearing indicate that some form of consent is now obtained prior to this treatment. The only question then is whether, under the eighth amendment, its use should be prohibited absent such consent; and if so what procedure must be followed to prevent abuses in the treatment procedures and to make certain the consent is knowingly and intelligently made.

■ At the outset we note that the mere characterization of an act as "treatment" does not insulate it from eighth amendment scrutiny. In Trop v. Dulles, 356 U.S. 86, 95, 78 S.Ct. 590, 2 L.Ed. 2d 630 (1958), the Supreme Court stated that the legislative classification of a statute is not conclusive in determining whether there had been a violation of the eighth amendment. Instead, the Court examined the statute by an "inquiry directed to substance," reasoning that "even a clear legislative classification of a statute as 'nonpenal' would not alter the fundamental nature of a plainly penal statute." Trop v. Dulles, *supra,* 356 U.S. at 95, 78 S.Ct. at 595.

Other courts have examined nonpenal statutes in the manner suggested by the Supreme Court in *Trop.* The contention that a state's incarceration of runaway juveniles could not violate the eighth amendment because the statute did not authorize any punishment of juveniles was struck down in Vann v. Scott, 467 F.2d 1235, 1240 (7th Cir. 1972):

> Whatever the State does with the child is done in the name of rehabilitation. Since—the argument runs—

by definition the treatment is not "punishment," it obviously cannot be "cruel and unusual punishment." But neither the label which a State places on its own conduct, nor even the legitimacy of its motivation, can avoid the applicability of the Federal Constitution. We have no doubt that well intentioned attempts to rehabilitate a child could, in extreme circumstances, constitute cruel and unusual punishment proscribed by the Eighth Amendment.

The absence of criminal incarceration did not prohibit a federal court from entertaining an eighth amendment claim to test the conditions of confinement in a boys training school:

> The fact that juveniles are *in theory* not punished, but merely confined for rehabilitative purposes, does not preclude operation of the Eighth Amendment. The reality of confinement in Annex B is that it is punishment.

Inmates of the Boys' Training School v. Affleck, 346 F.Supp. 1354, 1366 (D.R.I. 1972).

Such findings of cruel and unusual punishment have been sustained with respect to the death penalty,[3] penal incarceration for status,[4] civil commitment for status without treatment,[5] striprooms and solitary confinements,[6] tranquilizing drugs,[7] and corporeal punishment for prisoners.[8] However, any such determination rests on the facts of a particular case.

■ Here we have a situation in which an inmate may be subjected to a morphine base drug which induces vomiting for an extended period of time. Whether it is called "aversive stimuli"

---

3. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

4. Robinson v. California, 370 U.S. 660, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962).

5. Rouse v. Cameron, 373 F.2d 451 (D.C.Cir. 1966); New York State Ass'n for Retarded Children v. Rockefeller, 357 F.Supp. 752 (E.D.N.Y.1973); Martarella v. Kelley, 349 F.Supp. 575 (S.D.N.Y.1972).

6. LaReau v. MacDougall, 473 F.2d 974 (2d Cir. 1972), cert. denied, 414 U.S. 878, 94 S.

Ct. 49, 38 L.Ed.2d 123 (1973); Gates v. Collier, 349 F.Supp. 881 (N.D.Miss.1972); Landman v. Royster, 333 F.Supp. 621 (E.D. Va.1971); Inmates of Boys' Training School v. Affleck, 346 F.Supp. 1354 (D.R.I.1972).

7. Nelson v. Heyne, 355 F.Supp. 451 (N.D. Ind.1972).

8. Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968); Nelson v. Heyne, 355 F.Supp. 451 (N.D.Ind.1972); Landman v. Royster, 333 F.Supp. 575 (S.D.N.Y.1972).

or punishment, the act of forcing someone to vomit for a fifteen minute period for committing some minor breach of the rules can only be regarded as cruel and unusual unless the treatment is being administered to a patient who knowingly and intelligently has consented to it. To hold otherwise would be to ignore what each of us has learned from sad experience—that vomiting (especially in the presence of others) is a painful and debilitating experience. The use of this unproven drug for this purpose on an involuntary basis, is, in our opinion, cruel and unusual punishment prohibited by the eighth amendment.

We turn then to the question of how best to prevent abuse in the treatment procedures of consenting participants and how to make certain that the consent is knowingly and intelligently given. 42 U.S.C. § 1983 does not specify the scope of judicial relief available in an action successfully sustained under its terms. Yet this fact does not limit the courts in framing appropriate relief. Its counterpart, 42 U.S.C. § 1982, is likewise framed only in declaratory terms, but the Supreme Court has held that a federal court is not thereby precluded from fashioning an effective equitable remedy. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 414 n.13, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The substantive scope of relief available is a matter of the equitable powers of the federal courts. Accordingly, courts have exercised broad remedial power in civil rights actions. *See* United States v. Ironworkers Local 86, 443 F.2d 544, 553 (9th Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971) ; Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 428 (8th Cir. 1970) and cases cited therein.

Yet although it is generally true that:

[w]here all relevant circumstances have properly been evaluated the action of the trial court, whether granting or denying an injunction, ordinarily will be sustained.

Hodgson v. American Can Co., 440 F.2d 916, 920 (8th Cir. 1971), it is not un-

known for a federal appellate court to change the scope of an equitable order on appeal. United States v. St. Louis-San Francisco Ry., 464 F.2d 301 (8th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 900, 34 L.Ed.2d 687 (1973) [employment discrimination under Title VII] ; Carter v. Gallagher, 452 F.2d 315, 324 (8th Cir. 1971), modified en banc, 452 F.2d 327 (8th Cir.), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972) [employment discrimination under 42 U.S.C. §§ 1981 and 1983] ; Action v. Gannon, 450 F.2d 1227, 1237–1238 (8th Cir. 1971) [civil rights action under 42 U.S.C. §§ 1981, 1982, 1983, 1985].

In this case the trial court should enjoin the use of apomorphine in the treatment of inmates at the ISMF except when the following conditions are complied with:

1. A written consent must be obtained from the inmate specifying the nature of the treatment, a written description of the purpose, risks and effects of treatment, and advising the inmate of his right to terminate the consent at any time. This consent must include a certification by a physician that the patient has read and understands all of the terms of the consent and that the inmate is mentally competent to understand fully all of the provisions thereof and give his consent thereto.

2. The consent may be revoked at any time after it is given and if an inmate orally expresses an intention to revoke it to any member of the staff, a revocation form shall be provided for his signature at once.

3. Each apomorphine injection shall be individually authorized by a doctor and be administered by a doctor, or by a nurse. It shall be authorized in each instance only upon information based on the personal observation of a member of the professional staff. Information from inmates or inmate

aides of the observation of behavior in violation of an inmate's protocol shall not be sufficient to warrant such authorization.

The judgment of the district court is reversed with directions to grant the injunction under the terms hereinbefore set forth.

STEPHENSON, Circuit Judge.

I concur with the result.