Alvin **KIRBY**, Appellant,

v.

Dr. P. J. **CICCONE**, Director, Appellee.

No. 73–1817.

United States Court of Appeals, Eighth Circuit.

Jan. 21, 1974.

Alvin Kirby, filed motion for appointment of counsel pro se.

Bert C. Hurn, U. S. Atty., Kansas City, Mo., for appellee.

Before LAY, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

This matter is before this Court on Alvin Kirby's motion for appointment of counsel and for leave to proceed in forma pauperis. For the reasons hereinafter set forth those motions are denied.

Alvin Kirby is confined in the United States Medical Center for Federal Prisoners, Springfield, Missouri where he is serving a six-year sentence imposed pursuant to a plea of guilty for violation of 18 U.S.C. §§ 2 and 2113(a)(d). During the course of his confinement he filed a petition for writ of habeas corpus in the Western District of Missouri. That petition alleged: 1) that he was deprived of his first amendment freedom of religion by the denial of a pork free diet required by his Muslim beliefs; 2) that he was denied access to the courts in pursuit of post-conviction relief because of the limited scope of the Medical Center's law library; and 3) that he was deprived of his first amendment freedom of speech when he was denied personal interviews with the news media. The petition was referred to a United States Magistrate for pretrial recommendations pursuant to local Rule 26 of the Western District of Missouri and was consolidated with another pending habeas petition challenging the adequacy of the medical treatment he had received at the Medical Center. A Federal Public Defender was appointed to represent him on the consolidated petitions. Kirby moved to dismiss that portion of his petition which pertained to violations of his freedom of religion upon satisfactory resolution of his complaint and the matter was set for an evidentiary hearing before the magistrate.

The evidence adduced at the evidentiary hearing relating to Kirby's allegedly inadequate medical treatment disclosed that he had had numerous examinations and tests at the Medical Center

for an alleged bladder infection. His principal complaint related to the denial of antibiotics for the alleged infection. However, it was revealed that he had never requested antibiotics from any physician at the Medical Center. Accordingly, the magistrate recommended that Kirby failed to show a denial of medical care or such negligent disregard of his condition as would warrant a court to review his diagnosis and treatment.

With respect to his freedom of speech claim, Kirby indicated that he had never been denied the right to have a personal interview with the press, thus, he voluntarily elected to dismiss that count of his complaint.

Finally, Kirby submitted a list of the available books and documents in the Medical Center's law library. However, the magistrate found that claim to be without merit by taking judicial notice of the Public Defender Program at the Medical Center and holding, effectively, that the latter program complies with any constitutional requisite for legal assistance to inmates confined therein.

As permitted by local Rule 26, Kirby filed an exception to the magistrate's report and recommendation in the District Court for the Western District of Missouri contending that the magistrate made no finding of the adequacy of the library. Essentially, he argued that the magistrate did not find that the Federal Public Defender system provided *all* of the legal assistance to which an inmate might constitutionally be entitled. He also maintained that he was entitled to a library independent of the Federal Public Defender's legal assistance on the basis that he had a constitutional right to represent himself pro se. Thereupon the district court ordered that the portion of the petition that dealt with the adequacy of the law library be remanded to the United States Magistrate to make findings of fact and conclusions of law in regard to the constitutional adequacy of the Medical Center law library. The other recommendations of the magistrate were adopted by the Court and an

order was entered consistent with those recommendations.

On remand, a hearing was held on the adequacy of the library. At the hearing, an inventory of the available resources was conducted and the condition of the library was found to be in disarray and confusion. However, it was determined that the Medical Center library was in substantial compliance with a policy established by the Federal Bureau of Prisons setting forth guidelines for the adequacy of federal institutional law libraries. That policy was adopted subsequent to the decision in Gilmore v. Lynch, 319 F.Supp. 105 (N. D.Cal.1970) (three-judge court), aff'd sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). The magistrate held that, if the *Gilmore* list is a constitutional requisite, the Medical Center could come into compliance with little effort. However, the magistrate did not find that the *Gilmore* list was a constitutional requisite; he did not recommend that the Medical Center meet those requirements; and he did not hold that the Medical Center library was adequate in its existing condition. Instead he reasoned that the Federal Public Defender system was an adequate alternative to the provision of an adequate law library, thus no federal rights were denied by not providing legal resources to Medical Center inmates. In drawing that conclusion, the magistrate took judicial notice of the staff and function of the Public Defender system at the Medical Center and he relied on former judicial findings of the Western District of Missouri of the adequacy of that program under the criteria announced in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Ayers v. Ciccone, 303 F.Supp. 637, 640 (W.D.Mo.1969), appeal dismissed, 431 F.2d 724 (8th Cir. 1970).

Kirby again took exception to the magistrate's recommendations. However, the district court accepted the report and recommendation of the magistrate on the basis that the Federal Public Defender for the Western District of

Missouri presents an acceptable alternative to an adequate law library. Thereupon, Kirby's petition for a writ of habeas corpus was denied. This appeal followed.

Kirby's petition for a writ of habeas corpus presents the identical claim that was recently before this Court in Noorlander v. Ciccone, 489 F.2d 642 (8th Cir., 1973). Noorlander sought access to the courts in his attempt to secure post-conviction relief. We there held that the institution need not provide every means of access to the courts under Johnson v. Avery, *supra,* but that it must provide *some* means of access to the courts. We noted that, consistent with previous holdings of this court, an alternative under Johnson v. Avery, *supra,* must be evaluated on its own, reasonably contemporaneous with the assertion of the claim, and upon facts present in the record. Since there was no basis in the record for holding the public defender system was presently adequate to meet the requirements of Johnson v. Avery, *supra,* and since there was no finding in the alternative that the Medical Center law library was adequate, we remanded Noorlander's petition for an evidentiary hearing to establish the adequacy of one or the other of those alternatives under Johnson v. Avery, *supra.* The final disposition of Noorlander's claim will similarly resolve the claims here presented by Kirby.

■ We are concerned that Judge Lay would translate our opinions in Noorlander v. Ciccone, *supra,* and Knecht v. Gillman, 73–1374, 488 F.2d 1136 (8th Cir., 1973), into something that they are not. We did not hold in either case that a District Judge can delegate authority to a magistrate to hold evidentiary hearings or trials in civil rights actions under 42 U.S.C. § 1983. To the contrary, we expressly refrained in *Knecht* from expressing an opinion on the validity of a court rule which would permit such delegation. We simply held that a District Court may, pursuant to a court rule, delegate to a magistrate the power to hold preliminary evidentiary hearings in federal and state habeas corpus matters. We expressly stated that the delegation must be by court rule.

■ Contrary to the suggestions of Judge Lay, some decisions of the magistrate, including those concerning discovery and production of witnesses, are subject to de novo review pursuant to the rule if such review is requested within ten days from the date the order is made.

Judge Lay argues that the procedures approved in *Noorlander* will not simplify or add economy or efficiency to the judicial process. The facts tend to disprove that assertion. Magistrates working under the rule have successfully resolved many factual disputes leaving the court with the sole task of deciding cases. Moreover, the large backlog which existed at the Springfield Medical Center has been substantially eliminated through the use of the magistrate and the public defender system.

■ Finally, we cannot agree that the rule, as approved by this Court, delegates essential decision-making power to the magistrate. The judge continues to be responsible for all decisions, and we would have it no other way.

For the reasons hereinbefore set forth, Kirby's motion for appointment of counsel and leave to proceed in forma pauperis is denied.

■ Further proceedings in this appeal are stayed until such time as the issues presented in this case have been finally determined in the case of Noorlander v. Ciccone, *supra.* No briefs need be filed until further order of the Court.

[Editor's note: On February 7, 1974 the Court ordered reversal and remand for an evidentiary hearing as directed in Noorlander v. Ciccone, 489 F.2d 642.

LAY, Circuit Judge (dissenting).

I respectfully dissent. There exists no statutory authority for a United States District Judge to delegate to a magistrate the power to conduct trials in civil rights cases or evidentiary hearings in post-conviction cases under 28

U.S.C. §§ 2254 and 2255. This court in Noorlander v. Ciccone, 489 F.2d 642 (8th Cir. 1973), and, tacitly, in Knecht v. Gillman, No. 73–1374, 488 F.2d 1136 (8th Cir. 1973), gives limited approval to the extension of such authority to a magistrate in prisoner civil rights and habeas corpus cases. The reasoning in *Noorlander* is that although Congress did not give express authorization for the use of magistrates to conduct evidentiary hearings, nevertheless it did not prohibit it and therefore by implication such authority is permissible. I cannot endorse this reasoning.

First and foremost, this analysis too conveniently ignores the congressional struggle with the precise question as to whether an Article III judge may delegate to a magistrate the power to conduct an evidentiary hearing. The statutory language actually adopted in 28 U.S.C. § 636(b)[1] speaks only of "preliminary review of applications for posttrial relief." As *Noorlander* recites, this language was a narrower version of the proposed concept which had been directed to "preliminary consideration." This change was adopted only after much debate, urging and then specific rejection of the idea that magistrates should have the power to conduct evidentiary hear-

ings. After the debate the Senate Report 371 on June 28, 1967, observed: "It seems unwise to your committee to require that the district courts give magistrates duties other than those traditionally performed by commissioners." In Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), the Supreme Court explicitly held that United States Commissioners *could not* conduct habeas corpus hearings since Congress intended that the judge be the factfinder.

Second, to construe § 636(b) as giving implied authority to the district judge to delegate the power to conduct evidentiary hearings does a disservice to the plain language of the statute. If this authority is implicit within the Act, Congress would not have needed to set forth a provision allowing the appointment of the magistrate to serve as master in "an appropriate civil action" pursuant to the Federal Rules of Civil Procedure.[2] Further, the role of "preliminary review of application" hardly suggests the power to conduct evidentiary hearings. And finally, the suggestion that the evidentiary hearing may be held by the magistrate totally ignores the express authorized purpose of the "review" which is to make "a report and

---

1. 28 U.S.C. § 636(b) provides:

    (b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

    (1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts [F.C.A. Rules, part 1];

    (2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

    (3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing.

2. I do not read *Noorlander* as authority for a magistrate to conduct evidentiary hearings under the guise of acting as a special master. The appointment of a master should rarely occur and then only under "unusual" circumstances. *See* La Buy v. Howes Leather Co., Inc., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). Furthermore, Rule 53 of the Federal Rules of Civil Procedure contemplates that the district court will review the findings of fact of a master under the clearly erroneous standard. This is not suggested in *Noorlander* as an approved means by which a district judge may review the magistrate's findings in prisoner post-trial and civil rights actions.

recommendations . . . as *to whether there should be a hearing.*" (emphasis added). This provision is rendered meaningless if Congress actually intended the magistrate in the first instance to have authority to conduct an evidentiary hearing.

I fully agree with the *Noorlander* opinion that Local Rule 26, Section B.1.-b(5) of the Western District of Missouri is invalid as promulgated.[3] However, *Noorlander* did not go far enough. It approved a suggested revised procedure of "de novo review" by the district judge of a magistrate's findings, where a party excepts to the findings. In every instance where a magistrate holds an evidentiary hearing, if a party excepts to the findings of the magistrate, *Noorlander* now requires the district judge to hold an evidentiary hearing. This procedure makes little sense. Rather than improving upon the efficiency of the judicial process, such a procedure further encumbers it.

It is implicit in the *Noorlander* ruling that there is no such thing as a de novo review by the district court of a magistrate's ruling. I fully agree, since § 636(b) gives no adjudicatory power to a magistrate and, equally relevant, no appellate jurisdiction to a district judge. Although the *Noorlander* opinion refers to a de novo review, it really means that if a party excepts to the findings, then the district judge must hear the case anew. This is not a "review"; it simply means that the district court must start all over again and conduct a new hearing. In addition to the obvious unau-

thorized delegation under the statute, as a practical matter this is a foolish and inefficient procedure. It requires the production of witnesses, and the time of counsel and the prison authorities to be duplicated in two proceedings. In the vast majority of cases the losing party, be it the state, federal government, the warden or the prisoner, will seek a judicial re-determination of the disputed facts in the district court. Thus the "de novo review" procedure suggested in *Noorlander* fails to simplify, add economy or efficiency to the judicial process.

The only other possible justification for the procedure is that by holding an evidentiary hearing the magistrate is simply making a preliminary review to see whether there actually exists any material dispute of fact. This assumes that an evidentiary hearing is necessary at times to determine whether there exists a genuine dispute of fact. Surely this premise is false. I can only assume this means that in many cases a magistrate may be holding evidentiary hearings in cases where no evidentiary hearing should be held in the first place.

There exists a plethora of case law to aid the district court in deciding whether an evidentiary hearing is necessary. In my judgment the decision of Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971), is sufficient guidance here. The Supreme Court specifically held that before a petitioner is entitled to an evidentiary hearing in a post-conviction case, he must plead *facts*, which if taken as true would entitle him to relief. Only then is a party entitled

---

3. A magistrate has no authorized power to deny the right of a petitioner to proceed *in forma pauperis* or to deny the appointment of counsel. Yet the rule allows the magistrates to assume these powers. Both of these acts are judicial in nature, significant to both petitioner and the court. The grant of a certificate of *in forma pauperis* is not intended to be a perfunctory act. Section 1915 of Title 28 requires *the court* to determine whether a party may proceed *in forma pauperis*. Even more important to the petitioner and to the overall administration of justice is the decision to approve or deny the appointment of counsel. This again is

not a perfunctory administrative act. It requires judicial consideration. Members of this court spend many hours in reviewing and studying post-conviction files and often reviewing case law to determine whether a party and the cause of justice will be better served if counsel is appointed to brief and argue a case on appeal. This is our judicial function, as it is the district court's when presented to it. The local rule likewise allowed a magistrate to enter an order authorizing the transfer of a petitioner from a district. This rule was properly struck down in *Noorlander*.

to an evidentiary hearing. There is nothing complicated in such a rule. District courts as well as this court have passed on many situations in which an evidentiary hearing is deemed unnecessary. For a magistrate to hold an abortive hearing in order to decide that no facts are in dispute makes little sense. I cannot visualize any situation where a common sense judicial appraisal of the pleadings would not accomplish the same thing.

The statute contemplates a magistrate's review of "applications for postrial relief made by individuals convicted of criminal offenses." The status of *Noorlander, Kirby* and *Knecht* fall without this description. These are not "post-trial" motions. A federal prisoner complaining of conditions of confinement should not be treated any differently than a state prisoner filing a complaint under § 1983 of the civil rights act. *Cf.* Wilwording v. Swenson, 404 U. S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). If this is the intended meaning of Congress under § 636(b), then the Act violates the equal protection clause of the Constitution. But clearly, this is not what Congress wrote into law. The plain and simple truth of the matter is that a magistrate has no power whatsoever to entertain, hear and adjudicate any action brought by federal or state prisoners or anyone else.

The writer is fully sympathetic with the vexatious problem facing the district courts respecting the inundation of "prisoner cases." However, at the same time I sense that the earlier problem of state habeas filings is being solved. *See* Lay, Modern Administrative Proposals for Federal Habeas Corpus: The Rights of Prisoners Preserved, 21 De Paul L. Rev. 701 (1972). State courts are "toeing the constitutional mark" in criminal procedure in the original criminal trial; states now have effective procedures to entertain post-conviction cases. When these cases come to federal court, evidentiary hearings are rarely necessary, since the state record is now complete and the federal district judge may readily review that record. The same may be said about § 2255 proceedings, since I think it is universally recognized that the "criminal law revolution" is now over and the basic doctrines of fair procedure and process are reasonably settled. More and more law enforcement officials at least attempt to adhere to basic constitutional processes. This may not lessen the din or the number of petitions, but it greatly facilitates resolution of the complaints by all courts.

The great problem now faced by the federal courts is in the prisoner civil rights cases. There is no exhaustion requirement for state prisoners; thus there is no judicial "weeding out" of the state cases by state courts. Furthermore, the federal prisoners show no reluctance in filing complaints as to prison conditions. The easiest solution for many of these problems relating to conditions of confinement lies outside the hands of the judiciary. Many prison authorities are utilizing the omsbudsman concept in order to administratively "siphon off" judicial complaints. However, while Congress and state legislatures begin to recognize the dire need of changing prison conditions, making them minimally habitable for man, the courts must face the procedural question of how to physically cope with filings complaining of prison rules and conditions.

Local Rule 26 of the Western District of Missouri is, of course, an attempt to facilitate and expedite the handling of these complaints. To this extent, of course, the spirit of the rule is to be commended. Delay in processing these complaints is as intolerable as any other delay which occurs in the administration of justice. The difficulty is that the effort being made by the district court is not congressionally authorized and, more significantly, detracts from the fundamental responsibility of Article III judges "to decide cases before them." It has been recently reported by the Administrative Office of the United States Courts that magistrates handled over 250,000 "matters" in 1973. Based upon

recent case law,[4] a reasonable assumption may be made that many of these matters have been and are being delegated illegally. The conduct of actual jury trials, the adjudication of summary judgments, motions to dismiss, making requests for convening three-judge courts are all beyond the statutory power of a district judge to delegate to a magistrate. I do not intend to demean the valuable assistance of magistrates to the district court. As reflected in the Senate Report set forth in the *Noorlander* case, Congress felt the magistrate could assist the district judge in processing preliminary proceedings in both civil and criminal matters. This, however, is far short of conducting evidentiary hearings and making findings of fact. The idea that this is all preliminary and not binding since there is a "de novo review" cannot ratify the original illegal exercise of the magistrate's power. Furthermore, the rule requires a party to petition the district court to review a void judgment, to "intrude upon the district court's time" when in fact the party has a *legal right* to have the case heard by the district judge in the first place.

The fundamental question is whether the courts must sacrifice their judicial integrity in order to accomplish the task before them. Lawyers are resorting more and more to para-legal assistants to efficiently cope with their volume of work. Perhaps the theory now is that the judiciary must do the same to survive. However, I cannot join this school of thought. Despite protestations otherwise, my observation of over seven years on the appellate bench is that the judiciary as a whole has a long way to go in self-improvement before it may be said that we have reached our outer limits. Whether the answer lies in increasing the number of judges, revitalizing our rules and procedures, training judges to become more efficient and expeditious taskmasters or simply in working longer hours I cannot say. I suggest, however, that the solution should be sought within these alternatives before taking the easy way out of delegating "puisne judges" to make our decisions for us.

---

4. *See* cases cited in *Noorlander, supra* at 489 F.2d at 642.