**Fred Arispe CRUZ et al., Plaintiffs-Appellants,**

v.

**W. B. (Bill) HAUCK, Sheriff of Bexar County and Jesse Dobbs, Chief Jailer, Bexar County Jail, Defendants-Appellees.**

No. 72-2878
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 8, 1973.

Rehearing Denied April 24, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New

York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

---

Frances T. F. Cruz, Houston, Tex., for plaintiffs-appellants.

Ted Butler, Cr. Dist. Atty., Lucien B. Campbell, Asst. Cr. Dist. Atty., Bexar County, Crawford Martin, Atty. Gen., Austin, Tex., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This Section 1983 suit involves the constitutional propriety of restrictions on prisoners' access to legal materials. Acting upon the clear mandate of the United States Supreme Court, Cruz v. Hauck, 1971, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217, we previously remanded petitioners' case to the District Court for reconsideration in light of the principles enunciated in Younger v. Gilmore, 1971, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142, affirming Gilmore v. Lynch, N.D. Calif., 1970, 319 F.Supp. 105.

On remand the District Court, 345 F. Supp. 189, adopted, over the objection of and without hearing from the petitioners, three broad-brush regulations offered by the Government.[1] The petitioners strenuously object to the implementation of these regulations and urge that they will still serve to curtail petitioners' rights to equal access to the courts.

Federal courts are not prison managers. Ordinarily we accord great deference to the internal administrative decisions of prison officials. Royal v. Clark, 5 Cir., 1971, 447 F.2d 501; Krist v. Smith, 5 Cir., 1971, 439 F.2d 146; Haggerty v. Wainwright, 5 Cir., 1970, 427 F.2d 1137; Granville v. Hunt, 5 Cir., 1969, 411 F.2d 9. But where, as here, a prisoner alleges that a particular restriction imposed upon him by the prison officials impinges upon his exercise of constitutionally guaranteed rights, it is incumbent upon us to carefully scrutinize the effect of the restrictions. Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Williams v. Wainwright, 5 Cir., 1972, 461 F. 2d 1080; Campbell v. Beto, 5 Cir., 1972, 460 F.2d 765; Neal v. Georgia, 5 Cir., 1972, 469 F.2d 446 [1972]. It is clear that ready access to the courts is one of, perhaps *the*, fundamental constitutional right.

While the petitioners here have no right to usurp the regulatory powers

---

1. The rules which were offered by the Government and accepted by the trial court are as follows:

I

That legal materials and law books are available to prisoners if they have their own material or if their attorneys supply said materials or if said treatises or texts are ordered from any publishing company by the United States mail; provided that said legal materials do not have hard-bound covers, and provided further that the storage and maintenance of said materials do not unreasonably restrict and limit floor or wall space dimensional of the jail cell block.

II

That whereas every prisoner in the Bexar County Jail has access to retain

their court-appointed counsel and whereas every attorney has access to the Bexar County Law Library, it is proposed that every prisoner has and will have access to the Law Library through his attorney and may receive through his attorney any photostatic materials that he and his legal counsel deem necessary for the prisoner to seek his judicial remedies.

III

That the censors of the Bexar County Jail do not censor any correspondence between prisoners and their attorneys and based upon said premise such privileged communications including receipt of legal materials will be expedited through the use of the United States Mail.

of the prison officials, they certainly have standing to interpose objections to the promulgation of rules which will stifle the exercise of their constitutional rights. The court below failed to address itself to the specific objections offered by petitioners to the new regulations.

■■ Clearly it is not our function to formulate proper rules for the prisons. But in view of the fact that the trial court failed, as far as we can tell from the record, to confront the objections, we must reverse and remand for an evidentiary hearing to be followed by specific findings of fact and conclusions of law on the merits of petitioners' objections and the Government's justifications for the rules. In order to guide the trial court in its inquiry—and hopefully bring an end to this chronicle without need for further proceedings— we make several very general comments regarding the nature of petitioners' claims.

Respondents' first proposed rule prohibits the prisoners from possessing or using books with hard-bound covers. Two justifications are offered for this restriction: (i) the possibility that the hard-cover books could be used as weapons, and (ii) the fear that the importation of the books will be used as a method for smuggling contraband into the prison. Many common household items may be conceivably improvised for use as a weapon, e.g., a fork.[2] But the possibility that a fork could be used as a weapon would not justify prison officials in forcing prisoners to eat with their fingers. "The prisoner is no longer regarded as a temporary 'slave of the State', and prison officials are not now such masters of their own domain as to be free of the restraints of constitutional reasonability." Gilmore v. Lynch, *supra* 319 F.Supp. at 108.

The Government's contention that items of contraband could be secreted within the covers of the book is seemingly answered by Seale v. Manson, D. Conn., 1971, 326 F.Supp. 1375, cited in the Government's brief: "The inmate's possession of reading materials may, of course, be preceded by a careful examination to detect contraband, and considerations of space, sanitation and orderliness may require certain limitations." *Id.* at 1382.

■■ Rules II and III should also be the subjects of the Court's scrutiny on remand. They suggest that every prisoner will have access to legal materials —and thus, vicariously to the courts— via their attorneys. But this presupposes representation by counsel. Irrespective of the retention, appointment, or availability of counsel, it is clear that a prisoner's free access to the Courts is a constitutional imperative. Younger v. Gilmore, *supra*; Johnson v. Avery, 1969, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. Indeed, the waning altruism of a public defender representing a client with an apparently frivolous appeal may not be used to limit the petitioner's good faith prosecution of an appeal. See Lane v. Brown, 1963, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060; Macon v. Lash, 7 Cir., 1972, 458 F.2d 942; Harders v. California, 9 Cir., 1967, 373 F.2d 839. Petitioners have alleged and offered to prove that by tying access to legal materials to the prisoner's relationship with his attorney and the availability of materials from the Bexar County Law Library, Rules II and III will unreasonably impair their access to the Courts. We believe that they should be given the opportunity to make this proof.

■ While our disposition of this case requires further consideration by the district court, we reiterate that we do not deprive the prison officials of their prerogatives. Nor do we invest the prisoners with any special right to veto proposed prison regulations. All we hold is that prison regulations must

---

2. For an example of how a fork may be used as a weapon see Perkins v. Mississippi, 5 Cir., 1972, 455 F.2d 7, 19 n. 18 (Brown, C. J., dissenting).

not unreasonably invade the relationship of the prisoner to the courts, without some persuasive governmental justification.

Reversed and remanded.