Fred A. CRUZ et al., etc.,
Petitioners-Appellants,

v.

W. B. (Bill) HAUCK et al.,
Respondents-Appellees.

No. 74-2783.

United States Court of Appeals,
Fifth Circuit.

June 30, 1975.

Rehearing Denied July 30, 1975.

Frances T. Freeman Cruz, Chicago, Ill., for petitioners-appellants.

John L. Hill, Atty. Gen., Austin, Tex., Ted Butler, Crim. Dist. Atty., Keith W. Burris, David K. Chapman, Asst. Crim. Dist. Attys., San Antonio, Tex., for respondents-appellees.

Before THORNBERRY, COLEMAN and ROSENN *, Circuit Judges.

ROSENN, Circuit Judge:

This is the third appeal to this court by indigent inmates of the Bexar County Jail of Texas challenging the constitutionality of restrictions on their access to legal materials. Unfortunately, due to the state of the record, we must return the case to the district court for the fourth and, hopefully, final time.

* Of the Third Circuit, sitting by designation.

## I. The Background

■ This suit was filed by appellants pro se as a class action[1] on May 4, 1970, in the United States District Court for the Western District of Texas seeking declaratory and injunctive relief under 42 U.S.C. § 1983 against the enforcement of jail regulations restricting inmates' use and possession of legal materials. The district court's dismissal of the complaint was vacated and remanded by the Supreme Court for reconsideration in light of Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), aff'g, Gilmore v. Lynch, 319 F.Supp. 105 (N.D. Cal.1970) (three-judge court); Cruz v. Hauck, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971).

Upon remand, the district court approved, over the objection of and without hearing from the appellants, three rules offered by Bexar County Jail. Cruz v. Hauck, 345 F.Supp. 189 (W.D. Tex.1971). On appeal, we reversed the district court and remanded "for an evidentiary hearing to be followed by specific findings of fact and conclusions of law on the merits of petitioners' objections and the Government's justifications for the rules." Cruz v. Hauck, 475 F.2d 475, 477 (5th Cir. 1973).

The district judge then referred the suit to a United States magistrate to act as a special master and to conduct the required evidentiary hearing. Appellants did not object at any time to the reference. After the hearing, the magistrate submitted his proposed findings of fact and conclusions of law to the district judge. After allowing the litigants to file objections, the district judge adopted the magistrate's report with minor modifications.

The rules finally approved differ from the rules previously approved by the court in only two aspects: jail space must be provided for the use of hard cover lawbooks by the inmates; correspondence between inmates and judges may not be censored.[2] Not surprisingly, appellants once again appear before this court. In addition to contending that the rules do not provide adequate access to legal materials, appellants complain that the case improperly was referred to the magistrate, and that certain findings of fact in his report as adopted by the district judge were clearly erroneous. We find merit in certain of appellants' contentions, vacate the judgment of the district court, and again remand.

---

1. Cruz has been discharged and the record seems to indicate that the other individual plaintiffs are no longer confined in the Bexar County Jail. We have been unable to find any certification of this proceeding as a class action. The parties, however, have treated the litigation as though the district court made an appropriate certification. The defendants have not raised the issue of mootness and since the legal issues presented continue to affect the prisoners in the jail, contrary to the situation in Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), a case or controversy exists with respect to the validity of the rules at issue.

2. The rules now provide:

I. That legal materials and law books are available to prisoners if they have their own material or if their attorneys supply said materials or if said treatises or texts are ordered from any publishing company by the United States mail; provided that said legal materials do not have hard-bound covers, and provided further that the storage and maintenance of said materials do not unrea-

sonably restrict and limit floor or wall space dimensional of the jail cell block; *and additionally provided that such inmates shall have the right to use and study hard cover lawbooks in rooms on the first floor of the jail as designated by the jail authorities.*

II. That whereas every prisoner in the Bexar County Jail has access to retain their court-appointed counsel and whereas every attorney has access to the Bexar County Law Library, every prisoner has and will have access to the Law Library through his attorney and may receive through his attorney any photostatic materials that he and his legal counsel deem necessary for the prisoner to seek his judicial remedies.

III. That the censors of the Bexar County Jail do not censor any correspondence between prisoners and their attorneys *and judges,* and based upon said premise such privileged communications, including receipt of legal materials, will be expedited though the use of the United States mail.

Changes in the rules are italicized.

## II. Reference to Magistrate

Appellants contend that the district judge erred in referring the case to a magistrate to sit as a special master. Appellants, however, never objected at anytime to the magistrate conducting the evidentiary hearing. Under these circumstances, we need not consider whether the district judge acted improperly in making the reference for we believe that appellants have waived their right to object.

Much has been written lately by legal scholars and by the courts about judicial references to magistrates. We find it necessary because of the circumstances of this case to add to the discussion. Until recently, it almost was black-letter law that a party, who had not objected to a reference by the time of the adoption by the district judge of the master's report, had waived his right to do so. *See* Smith v. Brown, 3 F.2d 926, 927 (5th Cir. 1925). *See generally* 5A J. Moore, Federal Practice ¶ 53.05[3] (2d ed. 1974); C. Wright & A. Miller, Federal

Practice and Procedure § 2606 (1971). With the increased use of magistrates as special masters since the passage of the Federal Magistrates Act, the question no longer may be regarded as settled.[3]

██ The district judge referred this suit "pursuant to the order authorizing magistrates to issue certain writs entered by this Court on April 22, 1971." This action puzzles us. The April 22 order authorizes magistrates to issue appropriate writs in habeas corpus proceedings and in performing certain duties in criminal actions. The order does not authorize magistrates to conduct evidentiary hearings in civil rights cases, such as this one, filed under 42 U.S.C. § 1983. While prisoners' grievance suits often may be brought under either the Habeas Corpus Act or the Civil Rights Act,[4] the particular act under which a suit is brought has important procedural consequences. Indeed, if this suit had been brought as a habeas corpus action, the reference to a magistrate would have been void.[5]

---

**3.** In 1968, Congress enacted the Federal Magistrates Act, 28 U.S.C. § 631 et seq., which created a new class of federal judicial officers to replace the existing system of masters and commissioners. Section 636(b)(1) authorizes the assignment, pursuant to rules adopted by the majority of all the judges in the district, of a magistrate to serve "as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts." The escalated use of magistrates as masters has spawned considerable litigation in the courts over the power of district judges to make such references.

As indicated in the text of the opinion, the instant reference was not ordered pursuant to an applicable rule adopted under the Federal Magistrates Act; therefore, the Act may not be used to sustain the reference. The sole source of power for this reference is Rule 53 of the Federal Rules of Civil Procedure. Accordingly, we need not consider the issue currently dividing the circuits as to whether the Act expanded the reference powers of the district judge. *Compare* CAB v. Carefree Travel, Inc., 513 F.2d 375 (2d Cir. 1975) *and* Campbell v. United States District Court, 501 F.2d 196 (9th Cir. 1974), cert. denied, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1975) *with* Wedding v. Wingo, 483 F.2d 1131 (6th Cir. 1973) (alter-

nate holding), aff'd on other grounds, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974) *and* TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972). This issue soon may be decided since the Supreme Court has agreed to review Weinberger v. Weber, 503 F.2d 1049 (9th Cir. 1974), cert. granted, —— U.S. ——, 95 S.Ct. 1422, 43 L.Ed.2d 669 (1975).

**4.** Suits by inmates desiring greater access to legal materials have been brought as habeas corpus actions. *See, e. g.,* Kirby v. Ciccone, 491 F.2d 1310 (8th Cir. 1974).

**5.** In Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), the Court held that the Habeas Corpus Act required district judges personally to conduct evidentiary hearings in habeas corpus actions despite the argument that the Federal Magistrates Act empowered magistrates to conduct such hearings. In McCusker v. Cupp, 506 F.2d 459 (9th Cir. 1974), decided after *Wingo,* an evidentiary hearing conducted by a magistrate in a habeas corpus action was ruled invalid even though neither party to the action had objected in the district court to the reference.

Appellants suggest that since their suit could have been brought as a habeas corpus action, the holdings of *Wingo* and *McCusker* should apply here. The Court's holding in *Wingo* was based on the specific language of 28 U.S.C.

■ The reference is not void because ordered pursuant to an inapplicable rule of the district court. In the reference, the district judge directed that all proceedings before the magistrate "shall be conducted in accordance with the provisions of Rule 53 [of the Federal Rules of Civil Procedure]." Under Rule 53, anyone, with certain exceptions not relevant here, may be appointed a master who is "well versed in the law and fit to perform the duties incumbent on one sitting in the place of the court." 5A J. Moore, Federal Practice ¶ 53.03, at 2922 (2d ed. 1974). Since Rule 53 provides a basis for a reference to a master independent of the Federal Magistrates Act and the April 22 order, we shall treat the reference as though ordered pursuant to Rule 53.

■ Rule 53(a) authorizes a court in which any action is pending to appoint a special master. The district judge therefore was empowered to refer this suit to the magistrate subject to the limitations of Rule 53(b).[6] Appellants' contention that the reference was improper is " 'not a case where a court has exceeded or refused to exercise its jurisdiction' ";

it is rather a question of whether the judge " 'erred in ruling on matters within [his] jurisdiction.' " La Buy v. Howes Leather Co., 352 U.S. 249, 261, 77 S.Ct. 309, 316, 1 L.Ed.2d 290 (1957) (Brennan, J., dissenting).[7]

■ Since the judge's reference was within his power, a challenge to that order is unlike a challenge to a court's subject matter jurisdiction. The latter attacks the essence of the court's powers. An order without power is void; a challenge, therefore, to subject matter jurisdiction may be raised for the first time on appeal.

The power of the judge to order the reference also distinguishes the instant case from those cases relied on by appellants which have held orders of reference to be void. These cases fall into two categories. In the first group,[8] magistrates were authorized to render judicial decisions without adequate review by the district judges. Such orders properly were held to be void since neither federal statutes nor rules of civil procedure empower magistrates to hand down decisions in civil cases. *See, e. g.* Campbell v.

---

§ 2243 of the Habeas Corpus Act, as interpreted in Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941). Since appellants chose to bring this action under 42 U.S.C. § 1983, the reference to a magistrate is governed by Rule 53 and the limitations of 28 U.S.C. § 2243 do not apply.

**6.** Rule 53(b) provides:

(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

**7.** In *La Buy*, the five-man majority upheld the issuance of a writ of mandamus by the court of appeals vacating a district judge's order of reference "as necessary to proper judicial administration in the federal system." 352 U.S. at 259–60, 77 S.Ct. at 315. The dissenting opinion, while not deciding the propriety of the reference, believed that the issuance of a

writ of mandamus was improper. The majority opinion has been interpreted as holding that the courts of appeals possess the same power through the use of mandamus to supervise the administration of justice in their district courts as does the Supreme Court. *See* Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Rodgers v. United States Steel Corp., 508 F.2d 152, 161 (3d Cir. 1975); 9 J. Moore, Federal Practice ¶ 110.28 (2d ed. 1974). We therefore do not believe that the majority opinion in *La Buy* indicates that a particular reference, although improper, is outside the power of the district judge.

For a further discussion of *La Buy*, see pp. 329 to 330.

**8.** *See* Dye v. Cowan, 472 F.2d 1206 (6th Cir. 1972) (grant of certificate of probable cause in habeas action); Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972) (decision on whether substantial evidence exists to support denial of disability claim where this is the only issue in the case); TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972) (motions to dismiss and for summary judgment).

United States District Court, 501 F.2d 196, 206 (9th Cir. 1974), cert. denied, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1975). The second group involves cases where other statutes clearly provide that, despite the Federal Magistrates Act or Rule 53, magistrates were not empowered to hold evidentiary hearings.[9]

The magistrate in the instant case did not make a judicial order, but submitted his proposed findings of fact and conclusions of law to the district judge. After receiving the objections of the litigants to the magistrate's report, the judge made appropriate changes in the findings of fact, amended the jail's rules, and issued the final judicial order. We are unaware of any statute that requires a judge personally to conduct an evidentiary hearing in section 1983 actions.[10]

We therefore reject appellants' contention that the district judge's order was void and subject to challenge for the first time on appeal. This conclusion alone, however, does not mean that appellants have waived their right to object to the reference by not objecting in the district court. Rule 53(b) provides that "[a] reference to a master shall be the exception and not the rule," and that "in actions to be tried without a jury, save in matters of account and of difficult computations of damages, a reference shall be made only upon a showing that some exceptional condition requires it." The question remains whether the limitations found in Rule 53(b) upon the power of the court to order a reference may be waived by the litigants. The answer lies in whether the limitations of Rule 53(b) are to protect the litigants, or whether they emanate from constitutional constrictions upon non-Article III judges sitting in Article III-type cases. An examination of the history of the limitations upon the use of masters may be helpful in resolving this question.

Traditionally, references had been an inseperable part of equity procedure. The practice was to refer cases to an examiner for the taking of evidence, or to a master for the purpose of making recommendations to the court. See Comment, Masters and Magistrates in the Federal Courts, 88 Harv.L.Rev. 779, 789 (1975). Unless the parties consented to a reference, the report of the master was advisory, because the court had the power to substitute its own judgment as to the weight of the evidence. See Kimberly v. Arms, 129 U.S. 512, 523–24, 9 S.Ct. 355, 32 L.Ed. 764 (1889). Equity Rule 61½, 286 U.S. 571 (1932), adopted in 1932, provided that the findings of the master should be treated as presumptively correct unless "the court in the exercise of its judgment is fully satisfied that error has been committed." Federal Rule of Civil Procedure 53(e), as

---

**9.** Magistrates are not empowered to hold evidentiary hearings in habeas corpus actions, and any hearings conducted by magistrates are invalid. See note 5 supra.

Similarily, of the Civil Rights Act of 1964 directs the chief judge of a district to assign a Title VII case to a judge to hear and determine the case, 42 U.S.C. § 2000e–5(f)(4), (5). The judge shall hear the case at the earliest practicable date and, only if the case is not scheduled for trial within 120 days after issue is joined, may he appoint a master pursuant to Rule 53. In Flowers v. Crouch-Walker Corp., 507 F.2d 1378 (7th Cir. 1974), the court invalidated a local rule of the District Court for the Northern District of Illinois under which the clerk assigned Title VII cases to magistrates to conduct pretrial proceedings, and under which a judge routinely referred the case to a magistrate for an evidentiary hearing. Although the court did not indicate whether the plaintiff had objected to the reference in the district court, presumably all orders of reference under the local rule are subject to vacation and remand on appeal, even sans prior objection.

**10.** It has been suggested that our previous remand, 475 F.2d 475, limited the power of the judge to refer the case to a magistrate. That remand directed the "trial court," not the trial judge, to hold the required evidentiary hearing. This language is unlike that found in the Habeas Corpus Act, 28 U.S.C. § 2243, as interpreted by Holiday v. Johnston, 313 U.S. 342, 353, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), and the language of Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(4), (5). In the absence of specific language directing the district judge to hold the evidentiary hearing, our previous remand did not limit the power of the judge to refer the case pursuant to Rule 53.

adopted in 1938, and as it stands today, provides that the master's findings of fact are not to be disturbed unless "clearly erroneous." [11]

As the limitations on the scope of the judge's review of a master's findings of fact grew stricter, the power of the district judge to refer cases to a master became narrower. The early Rules of Equity placed no restrictions on the use of masters. Equity R. 73–83, 42 U.S. (1. How.) lxiv–lxvii (1842). An amendment to the Equity Rules in 1912 made a reference to a master the exception, save in matters of account, and "only upon a showing that some exceptional condition requires it." Equity R. 59, 226 U.S. 666 (1912). Federal Rule of Civil Procedure 53, as promulgated in 1938, consolidated the various Equity Rules on masters and left substantially unchanged the "exceptional condition" requirements of the 1912 rules. The present Rule 53 is substantially the same as the 1938 version.

The Supreme Court has construed the "exceptional condition" limitation in two major cases. In both cases, the Court has indicated that the constriction is the consequence of deficiencies in the master system; it is not because of constitutional considerations.

In Los Angeles Brush Manufacturing Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927), the Court upheld, due to calendar congestion, a particular reference to a master in a patent case. The Court, however, interpreted the "exceptional condition" limitation to forbid blanket referrals of patent cases. The only reason assigned was that references "had been productive of unnecessary expense and burden to the litigants

and caused much delay in their disposition." Id. at 707, 47 S.Ct. at 288.

Thirty years later, the Court again had an occasion to construe the "exceptional condition" for reference. In La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the district judge had referred a complex antitrust case to a master over the objections of the litigants. The judge already had heard and decided requests for discovery and admissions, and motions to dismiss and for summary judgment. The Court affirmed the court of appeals' grant of mandamus to vacate the reference, further narrowing the limitation with the admonition that references amount "to little less than an abdication of the judicial function." Id. at 256, 77 S.Ct. at 313.

The Court's conclusion appears to rest, not on constitutional grounds, but on three major problems that long had plagued the master system. The first two, the expense and the delay involved in references, already had been noted in *Los Angeles Brush Manufacturing Co.*[12] The third problem emanated from the evolution of the master's role from merely assisting the trial judge to the level where his findings of fact could not be disturbed unless "clearly erroneous." The new weight attached to the master's findings had the effect of transforming the traditional role of the district judge as a fact finder to the function of an appellate reviewer of the findings of fact. The cases that had been referred, however, were being tried "before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work." 352 U.S. at 259, 77

---

11.  Rule 53(e)(2) provides:

(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. . . . The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

12.  *La Buy* cited with approval the Seventh Circuit's decision in Good Eating, Inc. v. Best Places to Eat, Inc., 131 F.2d 809, 815 (7th Cir. 1942), which had noted that references "are expensive and time-consuming. The delay in some instances is unbelievably long. Likewise, the increase in cost is heavy. For nearly a century, litigants and members of the bar have been crying against this avoidable burden of costs and this inexcusable delay."

S.Ct. at 315. As the Court had noted in Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), in holding that a district judge, not a United States commissioner, must conduct the fact finding hearing in a habeas corpus proceeding:

> One of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony. . . . We cannot say that an appraisal of the truth of the prisoner's oral testimony by a master or commissioner is, in the light of the purpose and object of the proceeding, the equivalent of the judge's own exercise of the function of the trier of the facts.

*Id.* at 352, 61 S.Ct. at 1018, *quoted in* Wingo v. Wedding, 418 U.S. 461, 467, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974).

■ The ineluctable conclusion is that the "exceptional condition" limitation results from the deficiencies of the master system rather than from constitutional limitations upon non-Article III judges. This view also is supported by the early approval of the use of masters to try cases when both parties had consented. In United States v. Rathbone, 27 Fed. 711 (No. 16, 121) (C.C.S.D.N.Y.1828), the circuit court, in holding that a reference without consent was violative of the seventh amendment, acknowledged "there can be no doubt this could be done by the consent of the parties." *Id.* Similarily, in Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764

(1889), the Court held that when the parties consent to a reference, the master's findings of fact are to be taken as "presumptively correct." If the report of the master, both as to his findings of fact and conclusions of law, is to be "presumptively correct" when the parties consent to the reference, then limitations upon the power of the master to hold factfinding hearings cannot derive from constitutional considerations. Were this the case, the parties could not consent to a non-Article III judge's hearing an Article III case.

Finally, the Court explicitly has rejected the contention that "to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges." Crowell v. Benson, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932). In upholding a statutory scheme limiting judicial review of an administrative agency's findings of fact to determine whether the findings are supported by evidence, the Court expressly relied upon the practice of using masters to assist courts.[13]

■ We are of the opinion, therefore, that the policy underlying Rule 53 is the alleviation of unnecessary burdens to litigants and the cornerstone of the rule is the avoidance of delay, costs, and a fact finder other than a judge. We see no reason why the parties to the lawsuit, for whose benefit the restrictions are imposed, may not waive their objections to a reference.[14]

---

13. The Court in *Crowell* limited its conclusion by holding that courts have a duty to determine the facts upon which the jurisdiction of an administrative agency is grounded. 285 U.S. at 54–65, 52 S.Ct. 285. Although the Court's language speaks in broad terms of the necessity of courts making an independent determination of facts in cases involving constitutional rights, the case actually required a determination only of jurisdictional facts. The limitation "probably is no longer law." 4 K. Davis, Administrative Law Treatise § 29.08, at 156 (1958).

14. The policy against references also reflects the need for public confidence in the factfind-

ing process underlying a judicial judgment. In general, this interest is protected sufficiently by trying a case before a person, such as a magistrate, trained in the factfinding process.

If the underlying controversy is of widespread public interest, the need to maintain the confidence of the public in the factfinding process becomes more important. Under such circumstances, a reference may be denied even if litigants consent. We need not reach that issue for this is not such a case. Although presenting important constitutional issues, the instant controversy is between the officials and inmates of Bexar County Jail, none of whom, though represented by competent counsel, objected to the reference.

▆▆▆ A party objecting to a reference should do so prior to or at the time of the reference. If this is infeasible, the objection should be made to the judge at the earliest possible opportunity. 5A J. Moore, Federal Practice ¶ 53.-05[3] (2d ed. 1974). Such procedure permits the proper and efficient administration of the judicial process. Otherwise, a party disappointed with a master's report would be able to obtain "a second bite at the apple" by withholding his objection to the reference until after the report. Since appellants did not object to the reference in the district court, we hold that they waived their right to object and may not do so for the first time on appeal.

### III. Validity of the Rules

We turn next to the question of whether the Bexar County Jail Rules [15] provide adequate access for inmates to legal materials. Determination of this question must commence with consideration of the landmark case of Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970), aff'd sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

In *Gilmore*, the three-judge statutory court held that limitations on the type of legal materials available to prisoners unconstitutionally infringed upon the prisoners' right of access to the courts in the absence of a showing that prisoners had access through other avenues. The court noted that access to the courts, as guaranteed by Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), "encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." 319 F.Supp. at 110.

▆▆▆ *Gilmore* does not dictate, as appellants contend, that access to legal materials must be provided even if prisoners have access to counsel. The fundament underlying the right of access to legal materials is the right of access to the courts. This is the lodestar which guides our course. Access to legal materials is but one source, albeit an important one, of providing an adequate pathway to the courts. *See* Souza v. Travisono, 498 F.2d 1120, 1123 n.6 (1st Cir. 1974). As we interpret *Gilmore*, access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State. As the *Gilmore* court observed, "[t]he alternatives open to the State are legion." [16] 319 F.Supp. at 110.

In accordance with our previous remand, 475 F.2d 475, the magistrate conducted an evidentiary hearing to determine if the jail rules provided adequate access to the courts. The magistrates' conclusions of law, accepted by the judge, basically provide that the inmates have adequate access to the courts because "all indigent inmates of the Bexar County Jail are afforded the services of court-appointed counsel." [17] While the

---

15. *See* note 2 *supra*.

16. The approach we adopt is also the approach of the Eighth and Ninth Circuits. *See* Kirby v. Ciccone, 491 F.2d 1310 (8th Cir. 1974); Noorlander v. Ciccone, 489 F.2d 642 (8th Cir. 1973); Mead v. Parker, 464 F.2d 1108, 1113 (9th Cir. 1972).

17. The conclusions of law provide:

(1) Rule I of the jail rules cited in the opinion of the Court of Appeals is not an unreasonable restriction on the possession and use of hard-cover lawbooks by inmates, when considered with the right presently enjoyed to study such books in available rooms on the first floor; but the Rule should be amended to so provide.

(2) The provision of said Rule I with respect to the storage and maintenance of legal materials and lawbooks is a reasonable restriction, and does not impair access to the Courts by jail inmates.

(3) Reasonable access to the Courts is not impaired by the absence of a jail library where, as found herein, all indigent inmates of the Bexar County Jail are afforded the services of court-appointed counsel, which counsel have ready access to a complete law library with zerox reproducing facilities.

(4) The availability of counsel to inmates of the Bexar County Jail provides a reasonable alternative to the establishment of a law library for the exclusive use of jail inmates.

conclusions of law adequately comply with the teachings of *Gilmore*, we believe the findings of fact supporting the conclusions are deficient in two aspects.

First, one finding of fact states only that every inmate "accused of a criminal offense has access to an attorney." [18] The next finding of fact appears to limit such representation to inmates "charged with a state offense." Appellants contend that Bexar County Jail confines inmates seeking habeas corpus postconviction relief, federal prisoners, persons held as witnesses or for investigation, and individuals serving misdemeanor sentences, none of whom are assured counsel under the existing "rotation system." Second, the findings of fact do not state clearly whether attorneys representing those charged with state criminal offenses aid these inmates if they wish to file habeas corpus petitions or civil rights actions against jail conditions.

■ Thus, the findings of fact do not demonstrate that inmates wishing to file either habeas corpus petitions challenging the constitutionality of their incarceration, or civil rights actions challenging the conditions of their confinement have access to counsel.[19] Due process, however, requires "that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); see Souza v. Travisono, 498 F.2d 1120 (1st Cir. 1974). The right of access to the courts encompasses the right to file both habeas corpus petitions and civil rights actions. Andrade v. Hauck, 452 F.2d 1071 (5th Cir. 1971).

■ Reluctant as we are to remand again, these deficiencies compel us to return the case to the district court for an evidentiary hearing to determine whether all inmates of the jail have adequate access to the courts through means other than by access to legal materials. The burden of proof of demonstrating adequate alternative means is on the jail authorities. Novak v. Beto, 453 F.2d 661 (5th Cir. 1971). The record on remand should clearly demonstrate compliance by the defendants with their burden. If all inmates do have such access, the rules approved by the district court are constitutionally adequate, subject to the modifications we make below. If all inmates do not have such access, the court should devise a plan ensuring adequate entry to the courts, either by reasonable access to attorneys, or by reasonable access to legal materials, or by any other reasonable means the district court may devise.[20]

■ Bexar County Jail confines approximately 700 inmates; it is comparable in size to many state prisons. Nonetheless, the functions served by county jails in a state penal system should be

---

(5) Such alternative affords inmates a quality and quantum of legal assistance which is superior to that which they could obtain from their personal use of any law library.

(6) Reasonable access to the Courts is afforded through uncensored communications between inmates and attorneys as provided by Rule III; but the Rule should be extended by adding the words "and judges" after the word "attorneys".

18. Findings of Fact 14 and 15 provide:

(14) Every jail inmate accused of a criminal offense has access to an attorney at all reasonable times, either retained counsel or court-appointed counsel.

(15) A chief coordinator for the district courts is charged with the duty of seeing that every jail inmate charged with a state offense is represented by an attorney.

19. There is some evidence in the record, although disputed, indicating that such prisoners do have access to counsel. In the absence of appropriate findings by the district court we may not make our own.

20. In view of the grossly protracted nature of these proceedings, and to forestall any further appeals by either litigant, the district judge personally should conduct the proceedings on remand. If it becomes necessary to develop a plan to assure adequate access to the courts, the judge may rely of course on the suggestions of the litigants or of a technical consultant.

taken into account in determining whether all inmates have access to legal materials. *See* McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

County jails are generally short-term holding facilities confining individuals serving misdemeanor sentences, or awaiting trial or transfer to prisons. In the case of individuals not awaiting trial, the confinement may be so brief as to make it reasonable for them to await transfer to a permanent facility before petitioning the courts. For example, an inmate held in the jail for only two or three days while on the way to a state prison reasonably may await transfer before filing a habeas petition.

Therefore, in determining whether all inmates have adequate access to the courts, the district court need not consider those inmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions. The district judge should have little difficulty, realizing the fundamental nature of the right of access, in determining those cases where the brevity of confinement does not permit sufficient time for prisoners to petition the courts.

Under the circumstances of this appeal, we believe it appropriate to discuss appellants' objections to the rules now existing at the jail. First, Rule I prohibits the storage of hard cover lawbooks in the inmates' cells and restricts the storage of non-hard cover materials so as not to limit the "floor or wall space dimensional of the jail cell block." Such limitation is reasonable in the light of the duty of jail authorities to maintain security and to protect against the dangers of fire. *See* Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). While provision is made for storage of hard cover materials in an area designated by the jail authorities, no provision is made for the storage of non-hard cover materials in areas other than cell blocks. As indicated in our previous remand, legitimate restrictions on storage of legal materials should not act as a total bar to the storage of such materials. If prisoners safely may not store non-hard cover legal materials in their cells, the jail authorities should arrange for the storage of such materials in other readily available areas of the jail.

Second, as we read Rule I, inmates may have access to legal materials if owned by them, if such materials are supplied by their attorneys, or if the materials are ordered from any publishing house. Apparently, prisoners may not obtain legal materials from other sources, such as through friends or donations, even if provided at no cost to the state. Such restriction is unnecessary even for security purposes. The rules should allow inmates to obtain legal materials from such sources subject to screening only for security purposes.

Third, Rule I provides that prisoners have the right to use hard-cover lawbooks in an area designated by jail authorities. While the findings of fact indicate that prisoners are allowed to use these books from one to three hours per day, the rules are silent on this point. The rules should establish a reasonable procedure by which inmates may use for a reasonable period those legal materials not stored in their cells.

Finally, the rules should be applied and interpreted fairly and reasonably to effectuate the purposes mandated by the court, all of which can be achieved without unnecessarily sacrificing the security of the institution and without the need for recurring judicial intervention.

We have considered appellants' other objections to the report of the magistrate and to the existing jail rules and we believe they do not warrant additional discussion.

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.