**Raymond G. LASKY et al., Appellees,**

v.

**Sheriff Lawrence QUINLAN et al., Appellants.**

**Nos. 1391 and 1392, Dockets 76–7426 and 77–7032.**

United States Court of Appeals, Second Circuit.

Argued June 8, 1977.

Decided July 29, 1977.

---

Jack P. Levin, New York City, for appellees.

Peter R. Kehoe, Troy, for appellants.

Before TIMBERS, MESKILL, Circuit Judges, and PALMIERI, District Judge.*

PALMIERI, Senior District Judge.

This action was commenced on April 16, 1973 by the filing of a *pro se* class action complaint by five inmates at the Dutchess County Jail (the "jail") in Poughkeepsie, New York. The complaint sought injunctive and declaratory relief, and alleged violations of the inmates' constitutional rights and violation of 42 U.S.C. § 1983 by Sheriff Lawrence M. Quinlan and certain jail personnel. Jurisdiction was invoked under 28 U.S.C. §§ 1343 and 2201 and 42 U.S.C. § 1983.

* Of the United States District Court for the Southern District of New York, sitting by designation.

The District Court appointed counsel to represent the inmates, conducted an evidentiary hearing, and made a personal inspection of the jail in the company of counsel for both sides and a court reporter. Thereafter, at the suggestion of the District Court, counsel for both sides entered into a stipulation, dated July 25, 1973, providing for the implementation of improvements by the Sheriff with respect to certain conditions at the jail. The Court approved the stipulation by order dated July 30, 1973 and added as a further requirement that the Sheriff post a new set of rules and regulations consistent with the stipulation and provide each inmate with a copy of it upon his admission. The Court stated that as a result of the hearing and inspection of the facility it was of the opinion that the jail was "a generally acceptable institution in constitutional terms . . . [with] room for improvement in certain respects." The Court determined that in view of the stipulation "there is no need to declare this a class action, since I can find nothing substantial in a constitutional sense that is likely to be added because of a class determination." The Court dismissed the action upon the filing of the stipulation, "subject to reopening or the institution of contempt proceedings in the event of a willful failure to comply with the aforesaid order of the Court."

The stipulation provided for the improvement of conditions in ten general areas. First, it required that pre-trial detainees not occupy the same rooms with convicts under sentence and that minors not be housed in the same rooms with adults. Second, it set forth certain requirements with respect to personal hygiene, including the laundering of linen, bedding, and institutional clothing and the bathing of inmates. Third, it provided for several changes in the administration of health services, including the availability of medical examinations and treatment, the maintenance of records, and the improvement of present health service facilities. Fourth, the stipulation set forth certain minimum sanitation standards for the jail's kitchen and food service staff and required that these facilities be inspected regularly by public health authorities on the same basis as restaurants serving the public. The fifth provision required that the jail's outdoor exercise and recreational area become operational within six months of the Court's approval of the stipulation.

The sixth, seventh and eighth provisions of the stipulation concerned inmate communication, reading materials and legal assistance, respectively. With respect to communication, the stipulation provided for notice to inmates of any restrictions on correspondence, set forth the basis on which incoming mail could be censored and the procedures to be followed for censored mail, and established rules for inmates' use of telephones. With respect to reading materials, the stipulation set forth the basis on which reading material could be censored. With respect to legal assistance, the stipulation provided that inmates who were unable to secure counsel in civil or criminal matters would be permitted to consult with other inmates for such purposes.

The ninth provision set forth a series of conditions to be observed in the event that an inmate was disciplined by way of confinement in a cell apart from other inmates or placed on a restricted diet. It further provided for the supervision and, if necessary, the medical examination of inmates whose physical or mental conditions created a risk of their endangering themselves or other inmates or a need for requiring protection from other inmates. In addition, the Sheriff was required to promulgate and post in a prominent place a list of the rules and regulations governing inmate conduct and the standardized procedures relating to it.

Finally, the tenth provision required that alterations and repairs to the physical plant be effectuated to provide for adequate lighting, heating, ventilation and plumbing facilities. Within thirty days of the approval of the stipulation, the Sheriff was required to submit to the District Court a plan for the implementation of the third, fifth, and tenth provisions of the stipulation.

On December 8, 1975, plaintiffs' counsel moved for an order (1) adjudging Sheriff Quinlan in civil contempt for his alleged failure to comply with the Court's order of July 30, 1973, approving the stipulation; (2) compelling compliance with that order; and (3) awarding plaintiffs' counsel reasonable attorney's fees and the costs incurred in prosecuting the contempt action. The matter was reopened, and a four day hearing on the motion was held before Judge Werker of the Southern District of New York. In an opinion dated June 21, 1976, Judge Werker held that Sheriff Quinlan had failed to comply with substantially all of the provisions of the stipulation in the lengthy period following its approval. 419 F.Supp. 799 (S.D.N.Y.1976). Although the Court stated that it was unnecessary for its adjudication of contempt to find that the Sheriff willfully failed to comply, it found that plaintiffs had demonstrated such willfulness with respect to several provisions of the stipulation. In an order dated July 7, 1976, pursuant to this opinion, the Court assessed a fine of $500 against the Sheriff, ordered that he pay the attorney's fees and expenses incurred in connection with the contempt proceeding, and ordered that he comply with the stipulation or submit a plan for compliance within 30 days or be fined $50 per day thereafter until he filed such a plan and it was approved by the Court. After a hearing, the Court allowed plaintiffs' counsel attorney's fees in the amount of $35,000 and disbursements in the amount of $9,573.48. Judgment in the amount of $44,573.48 was entered on December 13, 1976, and Sheriff Quinlan filed a timely notice of appeal.

■ Although Sheriff Quinlan has asserted several arguments on appeal, the Court need not reach any of the issues raised because it has concluded that the judgment of contempt must be vacated on the ground that the action is moot. All five of the named plaintiffs were no longer in custody in the Dutchess County jail at the time the contempt proceeding was commenced. Since the District Court denied class certification in its order approving the stipulation, there is no longer any party to

this action having an interest in the enforcement of the consent decree. Thus, the case is moot and this Court is without jurisdiction. See *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *Ringgold v. United States*, 553 F.2d 309, 310 (2d Cir. 1977).

■ In the absence of a class certification, the plaintiffs cannot prosecute the action on behalf of present inmates of the Dutchess County jail under the relaxation of the mootness doctrine provided by *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *Boyd v. Justices of Special Term, Part I*, 546 F.2d 526 (2d Cir. 1976). Moreover, the exception to the timely certification requirement established in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), for persons who are similarly situated to the plaintiffs and have "a continuing live interest" in the issues is inapplicable. In *Gerstein*, the Supreme Court found that there was no indication in the record whether any of the named plaintiffs were still in custody awaiting trial at the time the District Court certified the class. Nevertheless, it held that the case was not moot because the controversy was so transitory that mootness might inevitably intervene before the District Court could reasonably be expected to certify the class. See also *Sosna, supra*, 419 U.S. at 402, n.11, 95 S.Ct. 553; *Boyd, supra*, 546 F.2d at 527 n.2. While under *Gerstein* and *Sosna* a belated certification may be said to "relate back" to the filing of the complaint, such an argument is unavailable where, as here, the District Court expressly denied class certification and there was no appeal from that determination. *Cruz v. Hauck*, 515 F.2d 322 (5th Cir. 1975), cited by the plaintiffs, is distinguishable for the same reason. In *Cruz*, the Court was "unable to find any certification of this proceeding as a class action" but the parties had treated the litigation "as though the District Court made an appropriate certification." 515 F.2d at 325, n.1.

The plaintiffs contend that Rule 71 of the Federal Rules of Civil Procedure provides a basis on which to seek to enforce the contempt judgment. We disagree. Rule 71 provides, in pertinent part:

When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party;

. . . .

It seems clear that Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action. 7 J. Moore, Federal Practice, ¶ 71.02 (1975). While Rule 71 may support a separate action by a present inmate to enforce the order obtained by the plaintiffs, it cannot be used by a party to enforce an order in an action in which he no longer has standing to sue. The cases cited by the plaintiffs in this regard are clearly distinguishable since each deals with a situation in which a non-party sought to enforce an order obtained by a party to the action by a motion for contempt.

Finally, while it may be argued that the Court itself has an interest in assuring that litigants comply with its orders, it is well established that a "civil contempt proceeding is wholly remedial, to serve only the purposes of the complaint, not to deter offenses against the public or to vindicate the authority of the court." *United States v. International Union, etc.*, 88 U.S.App.D.C. 341, 190 F.2d 865, 873 (1951); see also *Mac-Neil v. United States*, 236 F.2d 149, 153–54 (1st Cir.), *cert. denied*, 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956).

Since there is no individual plaintiff still in custody at the Dutchess County jail, no class certification by the District Court, and no basis on which the Court can vindicate its own authority in the context of a civil contempt proceeding, the Court is constrained to conclude that the case is moot. Accordingly, the judgment of the District Court is vacated and the case remanded to the District Court for dismissal. Nothing in this opinion is intended to prejudice the reinstitution of these proceedings on behalf of any present inmate of the Dutchess County jail.