IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40313
Summary Calendar
_____

YOLANDA R. CASTILLO,                                    Plaintiff-Appellant,

versus

POSTMASTER GENERAL ANTHONY M. FRANK,

                                                       Defendant-
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

November 27, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

     Plaintiff-Appellant Yolanda R. Castillo ("Castillo") appeals
the final judgment of the district court in favor of Defendant-
Appellee Postmaster General Anthony M. Frank ("Postmaster")
adopting the magistrate judge's finding of no discrimination on the
basis of sex.  We affirm.

FACTS AND PROCEDURAL HISTORY

     Castillo was employed by the United States Postal Service as
a letter carrier at the Downtown Station in Corpus Christi, Texas
until her discharge on July 25, 1988.  On June 9, 1988, she told
her immediate supervisor, Romera "Homer" Zuniga ("Zuniga") that she
had been attacked by an unknown black man at a location on her

delivery route. Zuniga reported the incident to the police and postal inspectors, and then accompanied Castillo to a doctor who examined and release her. Castillo was bruised on her right arm, but did not suffer any major or debilitating physical injuries.

While still at the doctor's office, Zuniga filled out portions of, and had Castillo complete and sign, a Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation and a Duty Status Report, certifying that Castillo had suffered an on-the-job injury and requested a continuation of pay and compensation for wage loss, if any.[1] Castillo was also interviewed by postal inspectors within one hour of the alleged attack.

The Postal Inspection Service began an investigation, but was unable to uncover a suspect or any witness to the incident, so the investigation was effectively closed. Approximately a week later, the postal inspectors received an anonymous telephone call from an individual who, after being assured that this individual's identity would remain confidential, volunteered information that the alleged assault had not occurred in the manner or place indicated by Castillo, but rather that her injuries were the result of a domestic disturbance at the home of one of her customers.

Based on the information provided by the confidential informant, the postal inspectors reopened the investigation. The postal inspectors again met with Castillo and offered her an opportunity to amend her account of the incident, which she declined to do. The postal inspectors then proceeded to attempt to

---

[1] Castillo, however, returned to work the next day.

2

verify the information they received from the informant. They visited the home of Elroy Chandler ("Chandler"), whose name and address they obtained from the informant. Chandler told the postal inspectors that he had grabbed Castillo by the right arm, and he showed the inspectors how he did it.

The results of the postal inspector's second investigation were reported in an Investigative Memorandum to the Postmaster in Corpus Christi. Based on the information contained in the Investigative Memorandum, Zuniga took steps to have Castillo removed. Castillo was issued a notice of removal on June 22, 1988, based on her fraudulent injury claim and improper conduct in violation of the U.S. Postal Service's Standards of Conduct.

Castillo unsuccessfully appealed her removal through the grievance-arbitration procedure contained in the applicable collective bargaining agreement. The Arbitrator denied Castillo's grievance, finding that the Postal Service had met its burden of establishing good cause for the notice of removal or rather, that Castillo acted dishonestly in wilfully filing a fraudulent injury claim.

Castillo also filed an informal complaint of discrimination with the Postal Service, and later filed a formal complaint on August 26, 1988. Both the informal and formal complaints were investigated, but settlement attempts proved unsuccessful. On January 10, 1989 a Notice of Proposed Disposition was issued by the Postal Service proposing a finding of no discrimination. In response to the notice, Castillo requested a hearing before an

3

Administrative Law Judge ("ALJ"). At the conclusion of the evidentiary hearing, the ALJ issued a Recommended Decision recommending a finding of no discrimination on the basis of age and national origin, but an affirmative finding of discrimination on the basis of sex. The ALJ further recommended reinstatement, appropriate back pay and benefits and attorneys' fees and costs. However, on October 3, 1989 the Postal Service issued a final decision finding no discrimination on the basis of age, national origin, or sex.

On October 31, 1989, Castillo filed a complaint in federal court against the Postmaster alleging that her termination was based on unlawful sex, national origin and age discrimination in violation of Title VII.[2] On June 7, 1991, Castillo filed a motion to compel the identity of the confidential informant. A magistrate judge heard argument and issued an order on July 2, 1991 granting Castillo's motion to compel. On July 5, 1991, the district court issued an order referring the case to the magistrate judge as special master pursuant to FED. R. CIV. P. 53 and 42 U.S.C. § 2000e-5(f)(5).

On July 12, 1991, the Postmaster filed objections to the magistrate judge's July 1, 1991 disclosure order on the basis that the requested information concerning the confidential informant was privileged. After hearing argument from the parties, the magistrate judge entered an order on August 26, 1991 overruling the

---

[2] She later amended her complaint and dropped the age and national origins discrimination claims.

Postmaster's objections and again ordered disclosure of the confidential informant's identity. On September 5, 1991, the Postmaster renewed his objections to the magistrate judge's disclosure order of August 26, 1991.

The district court issued an order on August 25, 1991 denying the Postmaster's objections without prejudice with leave to file authority establishing the court's authority to review a ruling by a magistrate judge acting as a special master on a non-dispositive motion. After the Postmaster filed his authority, a hearing was held, at which time the district court requested an *in camera* review of the information concerning the confidential informant. After receiving the sealed information, the court issued an order on June 3, 1993 denying the motion to compel on the basis that the identity of the confidential informant is privileged and exempt from discovery under Rule 26(b)(1), and setting aside the magistrate judge's July 2, 1991 disclosure order.[3]

The case was tried before the magistrate judge on November 21-22, 1994. In his Memorandum and Recommendations the magistrate judge concluded that there was insufficient credible evidence to prove disparate treatment of Castillo based upon her sex. The magistrate judge found that Castillo "failed to prove by a preponderance of the evidence that the [Postmaster]'s reasons for her discharge or failure to settle her grievance were pretextual and/or were motivated by the unlawful consideration of her sex,

---

[3] Castillo filed an interlocutory appeal, which was later dismissed after the district court denied Castillo's request for a 28 U.S.C. § 1292(b) determination.

5

rather than by valid labor and management reasons."  On March 6, 1995, the district court issued an order adopting the Memorandum and Recommendations of the magistrate judge, and final judgment was entered in favor of the Postmaster on March 8, 1995.

DISTRICT COURT'S REVIEW OF DISCLOSURE ORDER

Castillo contends that after the district court referred the case to the magistrate judge, acting as a special master pursuant to FED. R. CIV. P. 53 and 42 U.S.C. § 2000e-5(f)(5), the court lost its authority to review the magistrate judge's initial order granting Castillo's motion to compel the identity of the confidential informant.[4]  She argues that the district court had no authority to overrule the magistrate judge's disclosure order because the court did not reserve that right pursuant to Rule 53 by specifically limiting the special master's powers.  Castillo further argues that even if the court had jurisdiction and authority to review the magistrate judge's disclosure order, the court failed to make a finding that the magistrate judge's order was "clearly erroneous or contrary to law" in accordance with 28 U.S.C. § 636(b)(1)(A).

Our construction of the statutes and procedural rules involved

---

[4]  Castillo also argues the Postmaster's failure to object to the reference at the time it was issued waived his right to object to the reference after the fact by having the district court review the magistrate judge's disclosure order. *See Cruz v. Hauck*, 515 F.2d 322, 331 (5th Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976).  We find this argument without merit because the Postmaster did not and does not now make an objection to the reference; his objections are to the magistrate judge's ruling on Castillo's motion to compel.

in the instant case[5] leads us to the conclusion that the district court did have the authority to review the magistrate judge's ruling on Castillo's non-dispositive, pretrial motion to compel. Although not directly addressing the authority of the court to review non-dispositive motions, the Sixth Circuit has discussed the standard of review for the five kinds of references by district judges to magistrate judges in *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir. 1985), *cert. denied*, 479 U.S. 830, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986).

The magistrate judge's initial ruling on Castillo's motion to compel was made under the referral authority of 28 U.S.C. § 636 and FED. R. CIV. P. 72(a). Section 636(b)(1)(A) specifically requires the district court to apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling on a non-dispositive, pretrial motion such as a discovery motion. *Id.* at 954 (citing 28 U.S.C. § 636(b)(1)(A)).[6] By establishing a standard of review for the district court to apply, the statute can only be construed to give the district court authority to review such rulings. We hardly think a statute that establishes a standard of review for a

---

[5]  Those statutes and procedural rules are as follows:  28 U.S.C. § 636 (the Magistrates' Act); 42 U.S.C. § 2000e-5(f)(5); and FED. R. CIV. P. 53.

[6]  Section 636(b)(1)(A) provides in pertinent part:

a judge may designate a magistrate to hear and determine any pretrial matter pending before the court....A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

particular ruling would not naturally contemplate that such rulings will be susceptible to an application of that standard of review. Thus, we reject Castillo's argument that the initial ruling was not reviewable by the district court.

Additionally, we note that after the district court referred the case to the magistrate judge as a special master pursuant to 42 U.S.C. § 2000e-5(f)(5) and FED. R. CIV. P. 53, the magistrate judge once again ordered disclosure. Under Rule 53 this ruling is clearly reviewable. The scope of review of the magistrate judge's findings under this kind of reference is the "clearly erroneous" standard. *Id.* (citing FED. R. CIV. P. 53(e)(2)). The language of Rule 53 explicitly grants the court authority to review the findings of the special master, and thus implicitly grants authority to review the special master's rulings on non-dispositive, pretrial motions. We find no support for Castillo's contention that the language of Rule 53 expressly restricts the authority to review the rulings of the special master unless specifically reserved in the order of reference. We find no error in the court's review of the magistrate judge's granting of Castillo's motion to compel the identity of the confidential informant.

## HARMLESS ERROR

Even if we were to assume that the district court exceeded its authority or failed to properly apply the "clearly erroneous" standard in reviewing the magistrate's ruling, we find such error harmless. It is clear that disclosing the identity of the

8

confidential informant would not effect the magistrate judge's finding of no sex discrimination. Although the informant's tip precipitated the second investigation, the postal inspectors uncovered independent evidence to corroborate the tip that Chandler had assaulted Castillo instead of an unknown assailant. Thus, the decision to discharge Castillo was not based on what the confidential informant said about the assault but rather, was based on the independent evidence uncovered by the postal inspectors.

Castillo asserts that she could have proven discrimination if she had been able to show that the confidential informant was not credible. Such a showing, however, would not be relevant to the motivation of the decision makers.[7] Any issue with respect to the credibility of the informant does not disprove the Postmaster's honest belief that Castillo committed the violation, thereby successfully rebutting her *prima facie* case of disparate treatment. *See Risher v. Aldridge*, 889 F.2d 592, 598 (5th Cir. 1989). *See also Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). Castillo has not shown that the nondisclosure of the confidential informant's identity resulted in substantial prejudice. *See Global Petrotech, Inc. v. Engelhard Corp.*, 58 F.3d 198, 201 (5th Cir. 1995) (citing *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318-19 (5th Cir. 1994)).

---

[7] Castillo does not allege that the postal service schemed to get rid of her by inventing the story that Chandler assaulted her and fabricating a confidential informant.

CONCLUSION

For the reasons articulated above, the judgment of the district court is AFFIRMED.